IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| EDWARD E. BINTZ, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, 1849 C Street NW, Washington, DC 20240, <br><br> DOUG BURGUM, in his official capacity as the Secretary of the Interior, 1849 C Street NW, Washington, DC 20240, <br><br> BUREAU OF OCEAN ENERGY MANAGEMENT, 1849 C Street NW, Washington, DC 20240, <br><br> WALTER CRUICKSHANK, in his official capacity as Deputy Director of the Bureau of Ocean Energy Management, 1849 C Street NW, Washington, DC 20240, <br><br> U.S. ARMY CORPS OF ENGINEERS, 441 G St. NW Washington, DC 20314, <br><br> LIEUTENANT GENERAL WILLIAM H. GRAHAM, JR, in his official capacity as Chief of Engineers and Commanding General, U.S. Army Corps of Engineers, 441 G St. NW Washington, DC 20314, <br><br> Defendants. | Civ. A. No. __25-152___ |



RECEIVED
FEB - 7 2025
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## COMPLAINT

Plaintiff, Edward E. Bintz, brings this lawsuit against Defendants United States Department of the Interior, Doug Burgum, in his official capacity as the Secretary of the Interior, the Bureau of Ocean Energy Management ("BOEM"), Walter Cruickshank in is official capacity as

Deputy Director of BOEM, the U.S. Army Corps of Engineers ("USACE"), and Lieutenant General William H. Graham, Jr, in his official capacity as the Chief of Engineers and Commanding General of USACE, and alleges as follows:

## I. INTRODUCTION

1. This lawsuit relates to (a) BOEM's unlawful approval of US Wind Inc.'s Construction and Operations Plan ("COP") for its proposed Maryland Offshore Wind Project (the "Project") and (b) USACE's unlawful issuance of a permit for the Project covering Section 10 of the Rivers and Harbors Act and Section 404 of the Clean Water Act (the "USACE Permit").[1]

2. The Project, as authorized by the BOEM-approved COP and the USACE Permit, involves US Wind's construction of an offshore wind farm having up to 114 wind turbines, each with a height of 938 feet, 10.7 miles off the coast of Ocean City, MD and 12.4 miles from Bethany Beach, DE.[2] Power from the wind turbines would be brought ashore at 3R's Beach in Delaware Seashore State Park and traverse Delaware's Indian River Bay and Indian River to connect to a proposed substation in Millsboro, Delaware.

3. Under the Coastal Zone Management Act (the "CZMA"),[3] BOEM and USACE were barred from approving US Wind's COP and issuing the USACE Permit unless and until the following two requirements were satisfied:

> *First*, US Wind had to provide the Delaware Department of Natural Resources and Environmental Control ("DNREC") "consistency certifications," in respect of

---

[1] BOEM's website states that a construction and operations plan "is a detailed plan for the construction and operation of a wind energy project . . . ." https://www.boem.gov/renewable-energy/construction-operations.

[2] *See* COP Vol. II, Table 15-2. South Bethany, where Plaintiff's home is located, is more than a mile south of Bethany Beach so its distance from the proposed wind farm is less than 12.4 miles.

[3] 16 U.S.C. § 1451, et seq.

(a) BOEM's approval of the COP and (b) USACE's issuance of the USACE Permit. In the consistency certifications, US Wind was required to state, using language specified in CZMA regulations, that its proposed Project activities comply with Delaware's "coastal management program" (which was adopted under the CZMA) and will be conducted in a manner consistent with the program. ***Second***, DNREC had to concur (or be presumed to concur) with US Wind's consistency certifications.[4]

As addressed herein, these requirements were not satisfied before (or even after) BOEM's approval of US Wind's COP or USACE's issuance of the USACE Permit.

4. On July 9, 2024, DNREC issued to US Wind separate "conditional" concurrence letters for US Wind's COP and the USACE Permit. Pursuant to the conditional concurrence letters, DNREC concurred with US Wind's consistency certifications, but subject to eight conditions being satisfied.

5. CZMA regulations allow a State agency to issue a "conditional concurrence," subject to certain requirements being satisfied before expiration of the State agency's consistency review period (here, DNREC's review period ended July 9, 2024). *See* 15 C.F.R. § 930.4; 71 Fed. Reg. 788, 805-806. 15 C.F.R. § 930.4's requirements include that the applicant (here, US Wind) amend its COP or permit application, as applicable, to incorporate the conditions imposed by the State in its conditional concurrence letters.

6. Among other violations of 15 C.F.R. § 930.4(a), US Wind failed to amend its COP or its USACE Permit application to incorporate the conditions imposed by DNREC in its conditional concurrence letters.

---

[4] DNREC administers Delaware's coastal management program.

7.     Because the conditional concurrence letters failed to comply with 15 C.F.R. § 930.4(a)'s requirements, 15 C.F.R. § 930.4(b) requires that the letters be treated as objection letters. As a result, BOEM's approval of the COP and USACE's issuance of the USACE Permit violated the CZMA and were unlawful and must be set aside. BOEM and USACE also wrongly accepted watered-down US Wind consistency certifications (provided in an unsigned report prepared by US Wind's consultant, TRC (the "TRC Report")), that on their face failed to comply with the express requirements of 15 C.F.R. §§ 930.57 and 930.76(c).

## JURISDICTION AND VENUE

8.     Plaintiff brings this action pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701–706 (the "APA").

9.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

10.    This Court has authority to grant the relief requested by Plaintiff pursuant to the APA and the Declaratory Judgment Act, 28 U.S.C. 2201-2202.

11.    Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Plaintiff's property is located in this District.

## PARTIES

### PLAINTIFF

12.    Plaintiff Edward E. Bintz has been a South Bethany, DE homeowner for more than 20 years. His current home, which he has owned for more than fifteen years, directly fronts the ocean in South Bethany.

13.    Plaintiff is an active recreational user of the beach area adjacent to his home and to the north and south of his home. He regularly swims on South Bethany's beach. He regularly walks along the shoreline from South Bethany to Bethany Beach and from South Bethany into

Fenwick Island State Park. He regularly fat bikes along the shoreline from South Bethany to Fenwick Island and Ocean City and from South Bethany to Indian River Inlet.

14. Plaintiff regularly enjoys with guests the beautiful ocean views from his home and particularly from his home's roof deck. His roof deck is a social gathering spot, with photographs regularly being taken of the extraordinary views from the deck, both during the day and at night.

15. Plaintiff and his guests are always excited by their regular spotting of dolphins (and occasionally whales) and enjoy other shore wildlife.

16. The industrialization of the ocean and shoreline viewscape that would occur due to the Project and its damaging effects on marine and other wildlife will significantly damage the aesthetic, scenic and recreational values Plaintiff has enjoyed for many years from his home and along the shoreline.

17. The damage to aesthetic, scenic, and recreational values and the ongoing, inadequately addressed risk of environmental damage arising from wind turbine blade failures/breaks, petroleum leakages, or other problems will materially damage not only Plaintiff's enjoyment of his home but its value as well. The same factors will damage South Bethany's and Sussex County's tourism and other revenues, impairing their ability to provide important government services.

18. The harm Plaintiff would suffer as a result of the Project would be redressed by the relief he seeks in this lawsuit.

## DEFENDANTS

19. Defendant United States Department of the Interior is an agency of the United States federal government. The Department of Interior's mission includes protecting and managing the United States' natural resources. BOEM is a bureau within the Department of Interior.

5

20. Defendant Doug Burgum is Secretary of the Interior and is sued in his official capacity.

21. Defendant BOEM is a bureau within the Department of Interior. Its stated mission is to manage development of U.S. Outer Continental Shelf energy and mineral resources in an environmentally and economically responsible way.[5]

22. Defendant Walter Cruickshank is Deputy Director of BOEM and is sued in his official capacity.

23. Defendant USACE is the military engineering branch of the United States Army. It issues permits pursuant to section 404 of the Clean Water Act and section 10 of the Rivers and Harbors Act.

24. Defendant, Lieutenant General William H. Graham, Jr. is the Chief of Engineers and Commanding General of USACE and is sued in his official capacity.

## BACKGROUND

### The Coastal Zone Management Act (CZMA)

25. Among Congress' findings in enacting the CZMA was that "[s]pecial natural and scenic characteristics are being damaged by ill-planned development" in the coastal zone. 16 U.S.C. § 1451(g).[6] The CZMA is a voluntary program for States; if a State chooses to participate, the State develops and implements a "management program" in accordance with guidelines set

---

[5] U.S. Department of the Interior: Bureau of Ocean Energy Management, *About Us,* https://www.boem.gov/about-boem.

[6] The "coastal zone" is defined as "the coastal waters (including the lands therein and thereunder) and the adjacent shorelands . . . in proximity to the shorelines of the several coastal States. 16 U.S.C. § 1453(1).

forth in 16 U.S.C. § 1455.[7]  Coastal management programs set forth "objectives, policies and standards to guide public and private uses of lands and waters in the coastal zone." 16 U.S.C.§ 1453(12).

26. Under the CZMA, if a State has an approved coastal management program, applicants seeking a federal license or permit or approval of an outer continental shelf ("OCS") plan (such as US Wind's COP) that would have "coastal effects" are required to provide a "consistency certification" to the responsible State agency.[8]

27. For federal licenses and permits, the CZMA regulations require that the consistency certification state as follows: "The proposed activity complies with the enforceable policies of (name of State(s)) approved management program and will be conducted in a manner consistent with such program." 15 C.F.R. § § 930.57

28. For approvals of OCS plans (such as US Wind's COP), the CZMA regulations require that the consistency certification state as follows: "The proposed activities described in detail in this plan comply with (name of State(s)) approved management program(s) and will be conducted in a manner consistent with such programs." 15 C.F.R. § 930.76(c)

29. After a State agency receives an applicant's consistency certification (and information required under the CZMA regulations and the State's program), the State agency is

---

[7] Coastal zone management programs are subject to federal approval by the National Oceanic and Atmospheric Administration ("NOAA"), which is part of the Department of Commerce. *See* 16 U.S.C. § 1455(d)

[8] "Coastal effects" are defined under NOAA's regulations as any reasonably foreseeable effect on any coastal use or resource resulting from a Federal agency activity, Federal license or permit activity, or outer continental shelf plan. NOAA-issued regulations, 15 C.F.R. part 930, set forth the process for reviewing consistency certifications. Subpart D of the CZMA regulations (15 C.F.R. §§ 930.50-930.66) applies with respect to the issuance of federal licenses and permits. Subpart E (15 C.F.R. §§ 930.70 - 930.85) applies with respect to approvals of outer continental shelf plans (such as COPs for offshore wind farms).

required to notify the applicant and the applicable federal agency "at the earliest practicable time" whether the State agency concurs with or objects to the consistency certification. 15 C.F.R. §§ 930.62(a), 930.78(a). If the State agency does not respond within six months, the State agency is conclusively presumed to have concurred with the consistency certification.[9].

30. Until a State agency concurs (or is presumed to concur) with an applicant's consistency certification, the federal agency is barred from granting the license, permit or plan approval.[10]

31. The CZMA regulations allow a State agency to issue a "conditional concurrence," subject to requirements set forth in 15 C.F.R. § 930.4. These requirements are as follows: (1) The State agency must include in its conditional concurrence letter the conditions that must be satisfied, an explanation of why the conditions are necessary to ensure consistency with specific enforceable policies of the State's coastal management program, and identify the specific enforceable policies, (2) the applicant is required to modify the applicable plan or application to incorporate the conditions, and (3) the Federal agency must approve the amended application as modified to incorporate the State agency's conditions. If any of these requirements are not met within the State agency's consistency certification review period, then the conditional concurrence automatically becomes an objection. *See* 15 C.F.R. § 930.4; 71 Fed. Reg. 788, 805-806.

---

[9] *See* 15 C.F.R. §§ 930.62(a). State agencies and applicants (and persons under subpart E of this part) may mutually agree in writing to stay the six-month consistency review period. *Id.*

[10] *See* 15 C.F.R. §§ 930.53(d), 930.80. The license, permit or plan approval may also be granted if, upon timely appeal, the Secretary of Commerce finds "that the activity is consistent with the objectives or purposes of the [CZMA]" or "is necessary in the interest of national security." *See* 15 C.F.R. §§ 930.121, 930.122. For an activity to be consistent with the objectives or purposes of the [CZMA]," it must, among other things, further the national interest and the national interest furthered must outweigh the activity's adverse coastal effects. *See* 15 C.F.R. § 930.121

### Delaware's Coastal Management Program

32. Delaware's Coastal Management Program (7 Del. Admin. C. §2201) (the "Delaware CMP") was established by Delaware in accordance with CZMA guidelines and approved by NOAA. Pursuant to the Delaware CMP, proposed activities that are subject to federal approval and that would have reasonably foreseeable effects on Delaware's coastal uses and/or resources are reviewed by DNREC (which administers the Delaware CMP) for "consistency" with the environmental and other policies set forth in the Delaware CMP. The Delaware CMP sets forth (a) procedures that track the CZMA regulations' certification review procedures and (b) the State's "management program policies."

33. In accordance with the CZMA, Delaware's CMP requires applicants to submit consistency certifications. For federal permits and licenses (covered by Subpart D of the CZMA regulations), the Delaware CMP tracks the CZMA regulations, requiring the certification to state as follows: "The proposed activity complies with Delaware's approved coastal management program and will be conducted in a manner consistent with such program." 7 Del. Admin. C. §2201-3.2.1. For OCS plans (covered by Subpart E of the CZMA regulations), the Delaware CMP also tracks the CZMA regulations, requiring the certification to state as follows: "The proposed activities described in detail in this plan comply with Delaware's approved coastal management program and will be conducted in a manner consistent with such program." 7 Del. Admin. C. §2201-3.4.2.

34. Consistent with the CZMA, the Delaware CMP provides that until DNREC has concurred (or is presumed to have occurred) with the applicant's consistency certification, no federal licenses, permits, or approvals may be issued. *See* 7 Del. Admin. C. §§ 2201-2.2.2, 2201-2.2.3.

## DNREC's Review of US Wind's Consistency Certifications
## and Issuance of Conditional Concurrence Letters

35.     BOEM forwarded the TRC Report (which included consistency certification statements covering the COP and the USACE Permit) to DNREC on June 23, 2022. Thereafter, DNREC and US Wind entered into "stay agreements" on July 19 2022 and August 1, 2023 pursuant to which the six-month consistency review period was paused. Pursuant to the August 21, 2023 stay agreement, DNREC's consistency review period ended on July 19, 2023.

36.     The TRC Report included two consistency certifications – one for the USACE Permit (required by Subpart D of the CZMA regulations), and the other for US Wind's OCS plan (the COP) (required by Subpart E of the CZMA regulations).

37.     On July 9, 2024, DNREC issued two conditional concurrence letters to US Wind. One covered the COP, and the other covered the USACE Permit.[11] The conditions imposed by the letters were identical and are as follows:

> 1. The applicant shall obtain all necessary State permits/authorizations/leases regarding but not limited to the following: wetlands, subaqueous lands, water quality, air quality, coastal construction and/or sediment and stormwater plan reviews related to the construction and operation of the proposed project as regulated by the State of Delaware or its delegated authorities. State permits/authorizations/leases are included in the DCMP enforceable policies and must be obtained to be consistent with these policies. (DCMP Policies 5.2.4, 5.3.1.1, 5.3.1.19-20, 5.3.1.23, 5.3.1.31, 5.4.18, 5.4.20-21, 5.20.2, 5.21.1)
>
> 2. To ensure that beaches and dunes are able to perform their protective and recreational functions, no damage, destruction, or removal of any trees, shrubbery, beach grass or other vegetation growing on any state-owned or

---

[11] COP conditional concurrence letter: https://documents.dnrec.delaware.gov/coastal/federal-consistency/us-wind/2022-0088-US-Wind-Offshore-Maryland-Project-CCON-SubE.pdf; USACE Permit conditional concurrence letter: https://documents.dnrec.delaware.gov/coastal/federal-consistency/us-wind/2022-0088D-US-Wind-Offshore-Maryland-Project-CCON-SubD.pdf.

maintained beach seaward of the Building Line pursuant to 7 Del. Admin. Code 5102 shall occur. (DCMP Policy 5.2.13.4)

3. No bulk product transfer including bunkering and/or lightering shall occur in Delaware's coastal zone including Delaware waters pursuant to 7 Del. C. Chapter 70, 7 Del. Admin. Code 100, and *DE Natural Resources v. Vane Line, No. 06A-12-001-ESB (Del. Super. Ct. Nov. 19, 2007)*. (DCMP Policies 5.4.2, 5.4.10)

4. No permanent lighting shall be installed at the proposed landing location to minimize impacts to the Bethany Beach firefly (*Photuris bethaniensis*). (DCMP Policies 5.11.2.1, 5.11.3.2)

5. Onshore export cables in Delaware waters shall be buried at least 1.83 m (6 ft) below the authorized depth of any state or federal navigation channel. For the portions of the Indian River Bay not overlapping with a designated navigation channel, the cables shall be buried to 1.83 m (6 ft) pending obtaining state permits. This depth is necessary to avoid impacts to species that inhabit these state waters, and to minimize impact by other users including fisheries and other recreational activities. (DCMP Policies 5.4.22, 5.4.23, 5.4.24)

6. To ensure that proposed mitigation adequately offsets the proposed impacts to resources and uses, the applicant shall submit all mitigation and monitoring plans to the DCMP (DNREC_FederalConsistency@delaware.gov) for impacts to habitat and living resources such as marine mammals, sea turtles, birds, bats, fish, and invertebrates. (DCMP Policies 5.11.2.1, 5.11.3.2)

7. The applicant shall not conduct dredging in a biologically productive areas, such as nursery areas, shellfish beds, and submerged aquatic vegetation, if such dredging will have a significant or lasting impact on the biological productivity of the area. (DCMP Policy 5.4.26.1)

8. The applicant shall utilize any environmental engineering control (e.g., turbidity curtains) if required by state permits to minimize the impacts of turbidity on water quality from installation of the export cable within the Indian River and Indian River Bay, which is considered an exceptional recreational or ecological significance water. (DCMP Policies 5.3.1.7 and 5.4.23.1).

**BOEM's Approval of the COP; USACE's Permit Issuance**

38. On September 4, 2024, BOEM approved, pursuant to a published "Record of Decision" (the "ROD"), US Wind's COP for the Project under Section 8(p)(4) of the Outer Continental Shelf Lands Act. The ROD states that US Wind initially submitted its COP on August 11, 2020, with updated versions being submitted on November 23, 2021, March 3,

2022, May 27, 2022, November 30, 2022, May 27, 2023, July 28, 2023, February 19, 2024, May 10, 2024, June 25, 2024, and July 1, 2024.[12]

39. The ROD constituted BOEM's final agency decision on the COP. *See* ROD, pp. 31-36.

40. Pursuant to the terms of the ROD, approval of the COP became effective on the date of BOEM's notifying US Wind that the COP had been approved. *See* ROD, Appendix A, p. 2. BOEM notified US Wind of its approval of the COP pursuant to a letter from BOEM to US Wind dated December 2, 2024.

41. On January 16, 2025, USACE issued to US Wind the USACE Permit, which covers Section 10 of the Rivers and Harbors Act and Section 404 of the Clean Water Act.

## CLAIMS FOR RELIEF

### Count I
### BOEM's Approval of US Wind's COP– Violation of the CZMA and the APA

42. Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

43. The APA provides that the Court "shall . . . hold unlawful and set aside agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations. . .." 5 U.S.C. § 706(2)(C).

44. Under the CZMA, if a State maintains a CZMA-approved coastal management program (a "CMP"), federal agencies are barred from approving an applicant's OCS plan or

---

[12] *See* ROD, p. 3. https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/ROD-OCS-A-0490_0.pdf

issuing a license or permit to an applicant until the State agency administering the State's CMP concurs (or is presumed to concur) with the applicant's consistency certification. *See* 15 C.F.R. §§ 930.62(a), 930.78(b).

45. If the State agency objects to the applicant's consistency certification, the federal agency is prohibited from approving the applicant's OCS plan or issuing the license or permit unless the applicant successfully appeals the objection to the Department of Commerce pursuant an appeal filed within 30 days after the objection (or conditional concurrence treated as an objection).

46. On July 9, 2024, DNREC issued a conditional concurrence letter to US Wind. for US Wind's COP.

47. 15 C.F.R. § 930.4(b) provides that if a conditional concurrence fails to satisfy the requirements for conditional concurrences set forth in 15 C.F.R. § 930.4(a), the conditional concurrence is treated as an objection.

48. The conditional concurrence issued by DNREC for US Wind's COP failed to comply with the requirements set for in 15 C.F.R. § 930.4(a) because, among other things:

   (a) The conditional concurrence letter did not comply with the requirements of 15 C.F.R. § 930.4(a)(1), including because conditions 3, 7, and 8 set forth in the letter fail to include "an explanation of why the conditions are necessary to ensure consistency with the specific enforceable policies of the management program."

   (b) In violation of 15 C.F.R. § 930.4(a)(2), US Wind failed to modify its COP to incorporate the conditions specified in the conditional concurrence

letter prior to expiration of DNREC's review period on July 9, 2024.[13] In fact, US Wind never amended the COP to incorporate the conditions imposed under the conditional concurrence letter.

(c)   In violation of 15 C.F.R. § 930.4(a)(3), BOEM approved US Wind's COP without the COP having been amended to incorporate the conditions specified in the conditional concurrence letter.

49.   Because the conditional concurrence letter for the COP failed to comply with the requirements of 15 C.F.R. § 930.4(a), the letter is treated as an objection letter pursuant to 15 C.F.R. § 930.4(b). Thus, BOEM's approval of US Wind's COP violated 16 U.S.C. § 1456(c)(3)(B) and 15 C.F.R. § 930.80, which bar a federal agency from approving an OCS plan (such as US Wind's COP) until the State concurs (or is presumed to concur) with the applicant's consistency certification.

50.   As a result, BOEM's approval of the COP was (a) arbitrary, capricious, and in violation of law, and (b) in excess of its statutory authority, jurisdiction, or limitations, all in violation of the APA. This entitles Plaintiff to the relief requested below.

## Count II
## USACE's Issuance of the USACE Permit – Violation of the CZMA and the APA

51.   Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

52.   On July 9, 2024, DNREC issued a conditional concurrence letter to US Wind for

---

[13] For example, US Wind failed to amend the COP to include DNREC's condition that "no permanent lighting shall be installed at the proposed landing location [3R's beach] to minimize impacts to the Bethany Beach firefly." The U.S. Fish and Wildlife Service lists the Bethany Beach firefly as a threatened species under the Endangered Species Act that "is likely to become endangered within the foreseeable future due to existing and emerging threats." https://www.fws.gov/press-release/2024-09/service-proposes-protections-bethany-beach-firefly

the USACE Permit.

53. 15 C.F.R. § 930.4(b) provides that if a conditional concurrence fails to satisfy the requirements for conditional concurrences set for in 15 C.F.R. § 930.4(a) the conditional concurrence is treated as an objection.

54. Appendix A to the Final Environmental Impact Statement for the Project (entitled "Required Environmental Permits and Consultations") states on page A-3 that US Wind submitted its permit application materials to USACE during October 2023.[14] On October 6, 2023, USACE issued its public notice for the application establishing a comment period from October 6, 2023 to December 5, 2023.[15]

55. The conditional concurrence letter for the USACE Permit does not comply with the requirements of 15 C.F.R. § 930.4(a)(1), including because conditions 3, 7, and 8 in the letter fail to include "an explanation of why the conditions are necessary to ensure consistency with the specific enforceable policies of the management program."

56. In addition, on information and belief:

(a) In violation of 15 C.F.R. § 930.4(a)(3), US Wind failed to modify its application for the USACE Permit to incorporate the conditions specified in the conditional concurrence letter prior to expiration of DNREC's review period on July 9, 2024 (nor did it modify the application at any time thereafter).

---

[14] *See* https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/MDOffshore%20Wind%20FEIS_%20AppA_RequiredPermits_2024_18Dec2024.pdf

[15] *See* https://www.nab.usace.army.mil/Missions/Regulatory/Public-Notices/Public-Notice-View/Article/3547512/pn-23-44-nab-2020-60863-m34-us-wind-inc-md-offshore-wind-energy/

15

(b) In violation of 15 C.F.R. § 930.4(a)(3), USACE issued its permit to US Wind without US Wind's application having been modified to incorporate the conditions specified in the conditional concurrence letter for the USACE Permit.

57.  Because the conditional concurrence for the USACE Permit failed to comply with the requirements of 15 C.F.R. § 930.4(a), it is treated as an objection pursuant to 15 C.F.R. § 930.4(b). Thus, USACE's issuance of the USACE Permit violated 16 U.S.C. § 1456(c)(3)(B) and 15 C.F.R. § 930.80, which prohibit a federal agency from issuing a permit or license until the State concurs (or is presumed to concur) with an applicant's consistency certification.

58.  As a result, USACE's issuance of the USACE Permit to US Wind was (a) arbitrary, capricious, and in violation of law, and (b) in excess of its statutory authority, jurisdiction, or limitations, all in violation of the APA. This entitles Plaintiff to the relief requested below.

## Count III
## Consistency Certifications – Violation of the CZMA and the APA

59.  Plaintiff incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

60.  15 C.F.R. § § 930.57 requires consistency certifications for federal licenses and permits to state to as follows: "The proposed activity complies with the enforceable policies of (name of State(s)) approved management program and will be conducted in a manner consistent with such program." 15 C.F.R. § 930.57.

61.  15 C.F.R. § 930.76(c) requires consistency certifications for approvals of OCS plans (such as US Wind's COP) to state as follows: "The proposed activities described in detail in

this plan comply with (name of State(s)) approved management program(s) and will be conducted in a manner consistent with such programs."

62. Section 4.0 of the TRC Report (entitled "Statement of Consistency") provided identical US Wind consistency certifications for the COP and USACE Permit that plainly failed to comply with 15 C.F.R. §§ 930.57 and 930.76(c).[16] The certifications state as follows: "US Wind has determined that the Project complies with Delaware's approved coastal management program and will be conducted in a manner consistent with such program."

63. Rather than the unqualified consistency certifications mandated by the CZMA regulations, the unsigned TRC Report provided watered-down, caveated certifications ("US Wind has determined . . .") that ignore the specific certification language mandated by the CZMA regulations.

64. The unqualified certifications mandated by the CZMA regulations serve to compel an applicant to exercise a high level of diligence to ensure the validity of its consistency certification and the accuracy of the applicant's supporting facts and analyses. US Wind's noncompliant consistency certifications fail to serve this important function.

65. Thus, BOEM approved the COP and USACE issued the USACE Permit based on consistency certifications that were invalid on their face. As a result, BOEM's approval of the COP and USACE's issuance of the USACE Permit were (a) arbitrary, capricious, and in violation of law, and (b) in excess of their statutory authority, jurisdiction, or limitations, all in violation of the APA. This entitles Plaintiff to the relief requested below.

---

[16] The TRC Report (entitled "Consistency with Delaware State Coastal Zone Management Policies) is attached as Appendix M to Volume 2 of US Wind's COP. https://www.boem.gov/sites/default/files/documents/renewable-energy/App%20II-M2%20CZM%20Consistency%20Statement%20DE%20%28March%202024%29.pdf

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that BOEM's Record of Decision approving US Wind's COP was arbitrary, capricious, and in violation of law and in excess of its statutory authority, jurisdiction, or limitations in violation of 5 U.S.C. § 706;

B. Set aside and vacate the Record of Decision and BOEM's approval of the COP on that basis;

C. Declare USACE's issuance of the USACE Permit was arbitrary, capricious, and in violation of law and in excess of its statutory authority, jurisdiction, or limitations in violation of 5 U.S.C. § 706;

D. Set aside and vacate USACE's issuance of the USACE Permit on that basis;

E. Grant Plaintiff recovery of his fees, costs, and expenses incurred in connection with this litigation; and

F. Award any other relief the Court deems just and proper.

Respectfully submitted,

*/s/ Edward E. Bintz*

Edward E. Bintz
922 N. Cleveland St.
Arlington, VA 22201
Email: Ed.Bintz555@gmail.com

Dated: February 5, 2025