## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EDWARD E. BINTZ,                          )
                                          )
      Plaintiff,                    )
                                          )
      v.                            )   C.A. No. 1:25-cv-00152-GBW
                                          )
UNITED STATES DEPARTMENT OF THE           )
INTERIOR, *et al.*,                       )
                                          )
      Defendants,                   )
                                          )
      and                           )
                                          )
US WIND, INC.,                            )
                                          )
      Defendant-Intervenor.         )

## OPENING BRIEF IN SUPPORT OF DEFENDANT-INTERVENOR US WIND'S
## MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS

James H.S. Levine (Del. Bar No. 5355)
TROUTMAN PEPPER LOCKE LLP
Hercules Plaza, Suite 1000
1313 Market Street
Wilmington, DE 19801
Tel.: 302-777-6500
james.levine@troutman.com

*Counsel for Defendant-Intervenor*
*US Wind, Inc.*

Dated:  September 5, 2025

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS....................2

III.   SUMMARY OF ARGUMENT................................................................................2

IV.    STATEMENT OF FACTS .....................................................................................3

     A.     Federal and State Project Approvals. .......................................................3

     B.     Plaintiff's Alleged Injuries .....................................................................7

V.     STANDARD OF REVIEW ....................................................................................8

VI.    ARGUMENT ......................................................................................................9

     A.     Plaintiff Lacks Article III Standing .........................................................9

          1.     Plaintiff Has Not Adequately Alleged Injury In Fact..................................9

          2.     Plaintiff's Alleged Injuries Are Neither Traceable to Federal
              Defendants' Action nor Redressable by the Court. ...................................12

     B.     Plaintiff is Not Within the CZMA's Zone of Interests ...........................16

VII.   CONCLUSION..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*AES Sparrows Point LNG, LLC v. Smith*,
    527 F.3d 120 (4th Cir. 2008) ................................................................................ 17

*Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*,
    498 U.S. 517 (1991) .......................................................................................... 17

*Alston v. State*,
    2024 WL 3066907 (D. Del. June 20, 2024) ............................................................ 8

*Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*,
    503 F.3d 256 (3d Cir. 2007) ................................................................................. 4

*ASARCO Inc. v. Kadish*,
    490 U.S. 605 (1989) .......................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ........................................................................................... 8

*Casillas v. Madison Ave. Assocs., Inc.*,
    926 F.3d 329 (7th Cir. 2019) .............................................................................. 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .......................................................................................... 11

*CNA v. United States*,
    535 F.3d 132 (3d Cir. 2008) ................................................................................. 8

*Coastal Habitat All. v. Patterson*,
    385 F. App'x 358 (5th Cir. 2010) ................................................................... 10, 18

*Ctr. for Biological Diversity v. Env't Prot. Agency*,
    861 F.3d 174 (D.C. Cir. 2017) ............................................................................ 12

*Ctr. for L. & Educ. v. Dep't of Educ.*,
    396 F.3d 1152 (D.C. Cir. 2005) .......................................................................... 10

*Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.*,
    833 F.3d 360, 377 (3d Cir. 2016) ........................................................................ 16

*Doe v. Princeton Univ.*,
    30 F.4th 335 (3d Cir. 2022) .................................................................................... 9

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000) .................................................................................... 9

*Enos v. Marsh*,
    616 F. Supp. 32 (D. Haw. 1984) *aff'd*, 769 F.2d 1363 (9th Cir. 1985) ................................ 18

*Fla. Audubon Soc'y v. Bentsen*,
    94 F.3d 658 (D.C. Cir. 1996) .................................................................................. 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
    528 U.S. 167 (2000) ........................................................................................ 9, 11

*Gould Elecs., Inc. v. United States*,
    220 F.3d 169 (3d Cir. 2000) .................................................................................... 8

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) .......................................................................................... 12

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
    903 F.3d 278 (3d Cir. 2018) .................................................................................. 10

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012) .................................................................................... 8

*LaSpina v. SEIU Pa. State Council*,
    985 F.3d 278 (3d Cir. 2021) .................................................................................. 13

*Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*,
    742 F. App'x 628 (3d Cir. 2018) ............................................................................... 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................... 9, 12, 16

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) .......................................................................................... 17

*Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*,
    823 F.3d 184 (3d Cir. 2016) .................................................................................. 17

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) .......................................................................................... 17

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010) ................................................... 9

*Mayor & City Council of Ocean City v. U.S. Dep't of the Interior*,
    2025 WL 1827963 (D. Md. July 2, 2025) .................................. 18, 19

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997) ................................................... 9

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ................................................... 8

*Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*,
    966 F.3d 893 (9th Cir. 2020) ................................................... 16

*Nat'l Treasury Emps. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) ................................................... 11

*Ocean Advocs. v. U.S. Army Corps. of Eng'rs*,
    402 F.3d 846 (9th Cir. 2005) ................................................... 14

*Oceans v. United States Dep't of the Interior*,
    2025 WL 973540 (D.D.C. Apr. 1, 2025) .................................. 13, 18

*Powers v. Ohio*,
    499 U.S. 400 (1991) ................................................... 12

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011) ................................................... 10, 11

*Reschini v. First Fed. Sav. & Loan Ass'n of Ind.*,
    46 F.3d 246 (3d Cir. 1995) ................................................... 18

*Save Long Beach Island v. U.S. Dep't of Com.*,
    721 F. Supp. 3d 317 (D.N.J. 2024) .................................. 11, 14

*Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*,
    123 F.4th 1 (1st Cir. 2024) ................................................... 17

*Serrano-Lopez v. Cooper*,
    193 F. Supp. 2d 424 (D.P.R. 2002) ................................................... 18

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................... 9

*Spruill v. Gillis*,
  372 F.3d 218 (3d Cir. 2004) .......................................................................... 8

*State of N.J., Dep't of Env't Prot. & Energy v. Long Island Power Auth.*,
  30 F.3d 403 (3d Cir. 1994) ..................................................................... 17, 18

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ...................................................................................... 9

*Toll Bros., Inc. v. Twp. of Readington*,
  555 F.3d 131 (3d Cir. 2009) ........................................................................ 12

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................... 15

*Va. Bankshares, Inc. v. Sandberg*,
  501 U.S. 1083 (1991) .................................................................................. 18

*Venetec Int'l, Inc. v. Nexus Med., LLC*,
  541 F. Supp. 2d 612 (D. Del. 2008) .............................................................. 8

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................................... 16

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ...................................................................................... 9

**Statutes:**

6 U.S.C. § 1451 ................................................................................................... 1

16 U.S.C. § 1454 ................................................................................................. 4

16 U.S.C. § 1455 ................................................................................................. 4

16 U.S.C. § 1455(d) ............................................................................................ 4

16 U.S.C. § 1456(c)(3)(A) .............................................................................. 4, 18

16 U.S.C. § 1456(c)(3)(B) .............................................................................. 4, 17

33 U.S.C. § 403 ................................................................................................... 7

33 U.S.C. § 1344 ................................................................................................. 7

43 U.S.C. § 1331 ................................................................................................. 3

44 U.S.C. § 1507 ................................................................................................... 4

**Regulations:**

15 C.F.R. § 923.60 ............................................................................................... 4

15 C.F.R. Part 930, Subpart D ............................................................................ 4

15 C.F.R. § 930.57 ............................................................................................. 16

15 C.F.R. § 930.76(c) ........................................................................................ 16

30 C.F.R. § 585.601(b) ........................................................................................ 3

30 C.F.R. § 585.620 ............................................................................................. 3

30 C.F.R. § 585.626(a)(12) ............................................................................... 14

30 C.F.R. § 585.627 ........................................................................................... 13

30 C.F.R. § 585.628 ........................................................................................... 13

30 C.F.R. § 585.628(b) ........................................................................................ 3

30 C.F.R. § 585.628(f) ......................................................................................... 6

30 C.F.R. § 585.628(f)(1) ..................................................................................... 6

**Codes:**

7-101-4 Del. Admin. Code § 4.3 ........................................................................ 14

7-101-4 Del. Admin. Code § 4.5 ........................................................................ 14

7-5102-3 Del. Admin. Code § 3.7.1.5 ................................................................ 14

Del. Code Ann. tit. 7, § 7003 ............................................................................. 14

**Rules:**

Federal Rule of Civil Procedure 12(b)(1) ................................................. 2, 8, 19

Federal Rule of Civil Procedure Rule 12(b)(6) .................................................. 8

Federal Rule of Civil Procedure 12(c) ...................................................... 3, 8, 19

**Other Authorities**

7 Fed. Reg. 34901 (June 8, 2022) ............................................................................4

88 Fed. Reg. 69658 (Oct. 6, 2023) ...........................................................................4

89 Fed. Reg. 63221 (Aug. 2, 2024) ..........................................................................4

89 Fed. Reg. 73121 (Sept. 9, 2024) ..........................................................................5

## I.    INTRODUCTION

Defendant-Intervenor US Wind, Inc. ("US Wind") is the developer of the Maryland Offshore Wind Project (the "Project"), a wind farm located on the Outer Continental Shelf ("OCS"). The Project will supply clean, reliable power to homes and businesses in Maryland and will provide an array of benefits to Delaware's electrical grid, public utilities, and coastal communities. After extensive environmental studies, federal and state agency consultations, and public participation, Defendant the U.S. Bureau of Ocean Energy Management ("BOEM") approved the Project's Construction and Operations Plan ("COP") and Defendant the U.S. Army Corps of Engineers ("USACE") granted a permit for COP construction activities. The fully-approved Project will involve billions of dollars in private investment, support hundreds of new jobs, and provide up to 2,200 megawatts of wind energy—enough to power close to 718,000 homes in the Delmarva Peninsula and fulfill state and federal clean energy targets.

In his Complaint, Plaintiff Edward Bintz ("Plaintiff") seeks to block the entire Project on the basis of a procedural technicality. As provided in the Coastal Zone Management Act, 16 U.S.C. §§ 1451 *et seq.* ("CZMA"), the Delaware Department of Natural Resources and Environmental Control ("DNREC") "concurred" that the Project's COP is consistent with Delaware's Coastal Management Program ("DCMP"). Plaintiff argues that BOEM and USACE (collectively, the "Federal Defendants") improperly approved the COP because it was not amended to incorporate eight "conditions" in DNREC's letter of concurrence. But Plaintiff's claims do not even get to the starting line because Plaintiff lacks standing, is not within CZMA's zone of interests, and cannot bring a private suit under the CZMA.

Plaintiff lacks Article III standing because he has not pled and indeed cannot plead any actual or imminent injury related to the "conditions" supposedly omitted from the COP. And even if he had pled such injury, he does not and cannot establish that it is traceable to the omission of

1

those "conditions." That is because, by operation of BOEM's approval of the COP, the COP and the USACE permit are expressly subject to each and every condition in DNREC's concurrence letter. US Wind could no more disregard DNREC's conditions than it could any other condition of BOEM's COP approval. Moreover, Plaintiff has not identified and cannot identify a single aspect of the COP that is in any way inconsistent with the supposedly omitted "conditions." Further still, Plaintiff has no claim because he does not fall within the CZMA's zone of interests and because DNREC's express "concurrence" under the CZMA bars any private cause of action.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this action under the Administrative Procedure Act ("APA") on February 7, 2025, alleging that BOEM's COP approval and the USACE Permit violated the CZMA because the COP did not include the nominal "conditions" contained in DNREC's concurrence letter. D.I. 1. Counts I and II of the Complaint allege that BOEM and USACE failed to consider the DNREC concurrence letters. Count III of the Complaint alleges that US Wind's consistency certifications lacked phrasing required by CZMA regulations. On May 15, 2025, the Court granted Plaintiff's and the Federal Defendants' joint stipulation to extend the Federal Defendants' time to answer or respond to the Complaint until August 1, 2025. D.I. 19. On July 25, 2025, the Court granted US Wind's intervention. D.I. 21.

## III.    SUMMARY OF ARGUMENT

1.    The Court should dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing. Plaintiff lacks Article III standing because he has failed to plead actual or imminent injury in fact relating to any of the supposedly omitted "conditions" in DNREC's concurrence. Further, the documents expressly incorporated by the Complaint show that BOEM and USACE did, in fact, impose on the COP and the USACE permit, respectively, all of those "conditions." Indeed, Plaintiff does not allege there is any inconsistency

between those conditions and any aspect of the COP as approved by BOEM. As a result, he cannot plausibly allege that any purported injuries are traceable to the Federal Defendants' action.

2.      The Court should dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(c) because Plaintiff is not within the CZMA's zone of interests and, as a result of DNREC's express concurrence that the COP is consistent with the DCMP, the CZMA does not provide a private right of action.

## IV.    STATEMENT OF FACTS

### A.    <u>Federal and State Project Approvals.</u>

US Wind is an offshore wind developer, owner, and operator based in Baltimore, Maryland. BOEM initiated the offshore wind development process relevant to this case in April 2010. D.I. 5, Decl. of Laurie Jodziewicz ("Jodziewicz Decl.") ¶ 15. US Wind won two leases in a competitive auction in 2014 that were later merged into a single lease, OCS-A 0490 (the "Lease"), that encompasses approximately 80,000 acres located off the coast of Maryland on the OCS. *Id*. ¶ 17. The Project consists of 114 wind turbine generators, up to four offshore substations, one meteorological tower, and cabling. *Id*. ¶ 8. The generators and substations will be located in the Lease Area, about ten statute miles off Maryland's coast. *Id*. The Project is expected to generate enough clean, renewable energy to power over 718,000 homes and businesses; create over 13,000 jobs during its development, construction, and operation; and provide substantial benefits to the State of Delaware. *Id*. ¶¶ 9, 11.

Pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*, BOEM must approve a developer's COP and conduct review under the National Environmental Policy Act ("NEPA") before the offshore wind project is constructed. 30 C.F.R. §§ 585.601(b), 585.620, 585.628(b). After six years of surveys, analyses, and engagement with federal, state and community stakeholders, US Wind submitted its proposed COP to BOEM in 2020. Jodziewicz

Decl. ¶¶ 18-19. BOEM commenced its NEPA process for the Project in 2022. *Id.*; 87 Fed. Reg. 34901 (June 8, 2022).[1] Following issuance of the Notice of Intent to Prepare an Environmental Impact Statement ("EIS"), BOEM collected public comments and held three public scoping meetings at which interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS. 87 Fed. Reg. at 34901. Incorporating this feedback, BOEM published the draft EIS and initiated a public comment period in October 2023. 88 Fed. Reg. 69658, 69658-59 (Oct. 6, 2023). BOEM published its final EIS in August 2024. 89 Fed. Reg. 63221 (Aug. 2, 2024).

Under the CZMA, states adopt coastal zone management programs that are approved by the Secretary of Commerce. 16 U.S.C. §§ 1454, 1455. For states with approved CZMA programs whose coastal zones would be impacted by a proposed development, CZMA Section 307(c)(3) requires the person applying for a federal permit or proposing a development plan to provide "a certification" that the permitted activity or plan "complies with the enforceable policies of the state's approved program and . . . will be conducted in a manner consistent with the program." 16 U.S.C. §§ 1456(c)(3)(A), (B); *see also* 15 C.F.R. Part 930, Subparts D (consistency review for federal licenses or permits, *e.g.*, the USACE Permit) and E (consistency review for OCS Plans, *e.g.*, the COP). Delaware's CMP was adopted and approved pursuant to the CZMA. 16 U.S.C. § 1455(d); 15 C.F.R. § 923.60. As a result, BOEM's COP approval and the USACE Permit are subject to the CZMA's consistency requirements.

---

[1] US Wind cites to the *Federal Register* for certain noncontroversial points, as the Court may take judicial notice of the contents of the *Federal Register* on a motion to dismiss. *See, e.g.*, *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 273, n.11 (3d Cir. 2007); 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed").

As referenced in the Complaint, *see* Compl. ¶¶ 35, 62 n.16, in March and April 2024, BOEM, on behalf of US Wind, submitted updated consistency information to DNREC, including consistency certifications by US Wind covering both the COP and USACE Permit (the "Consistency Certifications"). Ex. 1-2.[2] Each Consistency Certification—prepared on a Delaware-mandated form—is accompanied by detailed expert reports; states that the Project is consistent with each element of Delaware's CMP; and concludes that US Wind "finds that this proposed activity complies with the enforceable policies of the Delaware Coastal Management Program and will be conducted in a manner consistent with such program." *Id.* at Section 3.0; *id.* at Coastal Zone Management Act Federal Consistency Form § VII.

Following a public information session on June 5, 2024, DNREC issued letters on July 9, 2024 (the "DNREC Concurrence Letters") stating that "DNREC conditionally concurs that the . . . Project as proposed . . . is consistent with DCMP's enforceable policies." Ex. 3 at 6-7; Ex. 4 at 6-7. The DNREC Concurrence Letters listed eight "conditions" (the "Concurrence Conditions") which the Letters stated "must be satisfied as they relate to the policies noted after each condition." *Id.*; *see* Compl. ¶ 37. The DNREC Concurrence Letters did not assert that any aspect of the COP was inconsistent with the Concurrence Conditions or that the COP itself had to be modified to satisfy the conditions.

After its extensive, multi-year review, BOEM, in September 2024, issued a Record of Decision ("ROD") documenting its adoption of the final EIS pursuant to NEPA, its decision to approve the COP, and its findings as to other applicable statutory requirements. 89 Fed. Reg. 73121, 73121-22 (Sept. 9, 2024). A September 4, 2024 Information Memorandum from the Chief

---

[2] Unless otherwise indicated, "Ex. __" refers to exhibits to the accompanying Declaration of James H. S. Levine, filed contemporaneously herewith.

of BOEM's Office of Renewable Energy Programs to the BOEM Director, attached to the ROD, acknowledges the DNREC Concurrence Letters and states that "Consultations and reviews for the Project under . . . CZMA . . . are complete." ROD, App. B at 13.

Pursuant to 30 C.F.R. § 585.628(f), BOEM formally approved the COP by letter dated December 2, 2024 (the "COP Approval"). Ex. 5. The COP Approval states: "<u>BOEM's approval is subject to the enclosed conditions of COP approval</u>, pursuant to 30 C.F.R. § 585.628(f)(1)." *Id.* at 1 (emphasis added). It further states:

> As provided in Section 1.1 of the enclosed conditions, <u>US Wind must conduct all activities as reflected in its approved COP and in compliance with</u> all applicable requirements (including those in commercial lease OCS-A 0490); applicable statutes and regulations; and <u>all permits, authorizations, and consultations issued by federal and state agencies for the Project</u> (including, e.g., requirements for compensatory mitigation).

*Id.* (emphasis added).

The accompanying "Conditions of Construction and Operations Approval" states in Section 1.1, entitled "Adherence to the Approved Construction and Operations Plan, Statutes, Regulations, Permits, and Authorizations":

> The Lessee must conduct all activities as proposed in its approved COP for the Project, as stated in these terms and conditions, and as described in any final plans with which the BOEM and/or the Bureau of Safety and Environmental Enforcement (BSEE) have concurred. Additionally, <u>the Lessee must comply with all applicable requirements in commercial lease OCS-A 0490 (Lease), statutes, regulations, consultations, and permits and authorizations issued by federal, state, and local agencies for the Project.</u>

Ex. 6 § 1.1 (emphasis added). The referenced "permits and authorization issued by . . . state . . . agencies for the Project" include the DNREC Concurrence Letters, including the Concurrence Conditions.

Distinct from the BOEM permitting process, US Wind applied for and obtained an individual permit from the USACE allowing, among other things, the construction of structures in

navigable waters of the United States pursuant to Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403, and the discharge of fill into those waters pursuant to Section 404 of the Clean Water Act. 33 U.S.C. § 1344. Jodziewicz Decl. ¶ 23. This permit not only enables US Wind's offshore construction but also authorizes the Project's export cable landfall at the Indian River Substation in Millsboro, Delaware and the construction of an operations and maintenance facility in West Ocean City, Maryland. *Id*.

Special Condition 6 of the USACE Permit expressly makes the permit subject to "BOEM's final conditions of COP approval." Ex. 7. Thus, pursuant to the express conditions of the COP Approval and the USACE Permit, US Wind must satisfy all eight Concurrence Conditions in the DNREC Concurrence Letters. Jodziewicz Decl. ¶ 28.

###### B.   Plaintiff's Alleged Injuries.

Plaintiff alleges he owns a home in South Bethany, Delaware, that "directly fronts the ocean," that he "is an active recreational user of the beach area" near his home, and that he "regularly swims," "regularly walks," and "regularly fat bikes" on or along the beach and shoreline. Compl. ¶¶ 12, 13. Plaintiff also alleges that he "regularly enjoys with guests the beautiful ocean views from his home," and that "Plaintiff and his guests are always excited by their regular spotting of dolphins (and occasionally whales) and enjoy other shore wildlife." *Id.* at ¶¶ 14, 15. Plaintiff alleges that "[t]he industrialization of the ocean and shoreline viewscape that would occur due to the Project and its damaging effects on marine and other wildlife will significantly damage the aesthetic, scenic and recreational values Plaintiff has enjoyed for many years from his home" and "materially damage" the value of his home. *Id.* ¶¶ 12-17. He also alleges that "[t]he same factors will damage South Bethany's and Sussex County's tourism and other revenues, impairing their ability to provide important government services." *Id.* ¶ 17.

## V.    STANDARD OF REVIEW

US Wind moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and under Rule 12(c) for failure to satisfy the zone-of-interests test and private right of action requirements.

> Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see* Fed. R. Civ. P. 12(b)(1). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion to convince the Court that it has jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

*Alston v. State*, No. 23-cv-1132-GBW, 2024 WL 3066907, at *1 (D. Del. June 20, 2024). Where, as here, defendant argues that the plaintiff fails to satisfy necessary factual "jurisdictional prerequisites," *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008), "the court may consider evidence outside the pleadings." *Gould Elecs. Inc.*, 220 F.3d at 176. Further, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

"The purpose of judgment on the pleadings [under Rule 12(c)] is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008). Motions under Rule 12(c) are subject to the same standards as motions under Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. The Court accepts as true factual

8

allegations, but not "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations omitted), "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The Court may consider documents that are "'integral to or explicitly relied upon in the complaint,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (citation omitted), as well as "matters of public record," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), including "letter decisions of government agencies" and "published reports of administrative bodies." *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 631-32 (3d Cir. 2018).

## VI.    ARGUMENT

### A.    Plaintiff Lacks Article III Standing

Before the Court can consider the merits of a legal claim, "the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). The plaintiff bears the burden of establishing all three elements of Article III standing: (1) "injury in fact" to the plaintiff that is "actual" or "imminent;" (2) that "the injury is fairly traceable to the challenged action of the defendant;" and (3) a likelihood "that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180-81 (2000). Plaintiff here cannot satisfy any of these elements.

### 1.    Plaintiff Has Not Adequately Alleged Injury In Fact

To establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "bare procedural violation, divorced from any concrete harm" is not enough to "satisfy the injury-in-fact requirement of Article III." *Id*. at 341; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural

right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."). Instead, in a procedural-rights case, "plaintiffs have standing only if, *inter alia*, (1) the government violated *their* procedural rights designed to protect *their* threatened concrete interest, and (2) the violation resulted in injury to *their* concrete, particularized interest." *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005) (emphasis added).

Plaintiff has not satisfied and cannot satisfy his burden to adequately plead actual or imminent injury relating in any way to the Federal Defendants' alleged violation of a CZMA regulatory requirement—*i.e.,* issuing the COP Approval and USACE Permit without first amending the COP to include the Concurrence Conditions. In the first instance, "[a]s there are no 'procedural rights' in the [CZMA] to bestow upon" a private party like Plaintiff, he "has failed to demonstrate that [he] suffered a concrete and particularized legally-cognizable harm" from any such CZMA procedural violation. *Coastal Habitat All. v. Patterson*, 385 F. App'x 358, 361 (5th Cir. 2010). But in any event, Plaintiff provides no plausible allegation as to how that alleged violation could possibly harm any of his recreational or aesthetic interests—including swimming, walking, biking, rooftop views of the ocean, dolphins or other wildlife, or home value. Compl. ¶¶ 13-17. Instead, Plaintiff provides broad and conclusory assertions of future harm, completely untethered to any of the Concurrence Conditions, that must be disregarded. *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018) ("[A] plaintiff must do more than offer conclusory assertions . . . to establish standing"); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41-42 (3d Cir. 2011) (noting that a "complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III" and that "[a]llegations of 'possible future injury' are not sufficient") (citations omitted).

For example, Plaintiff claims that the Project will cause "industrialization of the ocean and shoreline viewscape" leading to "damaging effects on marine and other wildlife [that] will significantly damage the aesthetic, scenic and recreational values" he derives from his home and surrounding area. Compl. ¶ 16. However, Plaintiff provides no support for his "general averments" and "conclusory allegations" of "recreational, aesthetic, and economic interests," which courts have consistently found to be "inadequate" to establish injury in fact. *Friends of the Earth*, 528 U.S. at 184; *Reilly*, 664 F.3d at 41; *Save Long Beach Island v. U.S. Dep't of Com.*, 721 F. Supp. 3d 317, 333-34 (D.N.J. 2024). Moreover, Plaintiff's alleged concern about the "viewscape" is too general to confer standing. *ASARCO Inc. v. Kadish*, 490 U.S. 605, 616 (1989) ("[G]eneralized grievances brought by concerned citizens . . . are not cognizable in the federal courts") (citations omitted). And, again, none of it is tied in any way to the Concurrence Conditions.

The same is true for Plaintiff's allegations of harm stemming from the purported "inadequately addressed risk of environmental damage arising from wind turbine blade failures/breaks, petroleum leakages, or other problems," and alleged detrimental effect on Plaintiff's home value. Compl. ¶ 17. Plaintiff, again, makes no allegations as to how the Project failed to address the vague risks he identifies, much less that any such failure pertains to the Concurrence Conditions. Conjecture about hypothetical future impacts is too speculative to support standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (citation modified); *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) ("[T]here is a difference between accepting a plaintiff's allegations of fact as true and accepting as correct the conclusions plaintiff would draw from such facts.").

As to the alleged impact to South Bethany's and Sussex County's tourism and revenue, Compl. ¶ 17, Plaintiff provides no plausible explanation as to how the county and municipality will be impacted by the Project or any of the Concurrence Conditions. In any event, Plaintiff cannot rely on county and municipal interests, as it is "fundamental" that "'a litigant must assert his or her own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Hollingsworth v. Perry*, 570 U.S. 693, 707-08 (2013) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

In sum, injury in fact analysis "is often determinative," *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009), and clearly it is here.

### 2. Plaintiff's Alleged Injuries Are Neither Traceable to Federal Defendants' Action Nor Redressable by the Court.

Even if Plaintiff had alleged a cognizable injury (he has not), he has failed to plausibly allege how the purportedly deficient CZMA process would cause any of his claimed injuries. Instead, Plaintiff's grievance is against the Project itself and unrelated to any alleged failure to incorporate the Concurrence Conditions. And because the COP Approval and the USACE Permit already require US Wind to satisfy the Concurrence Conditions, any alleged injury is neither traceable to their alleged omission from the COP nor redressable by the Court.

Demonstrating causation in a challenge to governmental action requires "much more" than would be the case in a challenge to private action. *Lujan*, 504 U.S. at 562. Indeed, "[e]stablishing causation in the context of a procedural injury requires a showing of two causal links: 'one connecting the omitted [procedural step] to some substantive government decision that may have been wrongly decided because of the lack of [that procedural requirement] and one connecting that substantive decision to the plaintiff's particularized injury.'" *Ctr. for Biological Diversity v. Env't Prot. Agency*, 861 F.3d 174, 184 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d

658, 668 (D.C. Cir. 1996)); *Oceans v. United States Dep't of the Interior*, No. 1:24-CV-141-RCL, 2025 WL 973540, at \*3 (D.D.C. Apr. 1, 2025) ("[P]laintiff must show that 'the procedural step was connected to the substantive result' and that there is a 'substantial probability' that the procedural mistake will create an adverse effect.") (citations omitted).  Plaintiff fails to establish either "causal link." Plaintiff's claims are premised on the false theory that the Concurrence Conditions are not independently binding on US Wind. They unquestionably are. As discussed above, the Conditions of COP Approval expressly incorporate "all applicable requirements in commercial lease OCS-A 0490 (Lease), statutes, regulations, consultations, and permits and authorizations issued by federal, state, and local agencies for the Project." Ex. 5; Ex. 6 § 1.1. For its part, the USACE Permit expressly incorporates the COP Approval conditions. Ex. 7. There is no question that the DNREC Concurrence Letters fall squarely within the scope of "permits" or "authorizations issued by . . . state . . . agencies for the Project." *See* BOEM, *Final Environmental Impact Statement*, Appendix A at A-5 (August 2, 2024) (listing DNREC's CZMA concurrence under "Required Environmental Permits and Authorizations").[3] US Wind is thus bound to "satisfy" the Concurrence Conditions as required by the DNREC Concurrence Letters.

Further, Plaintiff makes no attempt to show that any of the Concurrence Conditions relate to Plaintiff's recreational and aesthetic interests, and has not alleged that the Concurrence Conditions are not legally binding on US Wind or advanced any basis to suggest that US Wind may not fully implement any of them. *See LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 286-87 (3d Cir. 2021) (dismissing for lack of standing where plaintiff failed to connect alleged misconduct to her claimed injury). The only condition as to which Plaintiff offers any allegation

---

[3] Appendix A of the final EIS is available at
https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/MDOffshore%20Wind%20FEIS_%20AppA_RequiredPermits_2024_18Dec2024.pdf.

is condition 4, regarding permanent lighting, which he contends could impact the "Bethany Beach firefly." Compl. ¶ 48, n.13. However, Plaintiff does not claim any interest in the firefly. *Save Long Beach Island*, 721 F. Supp. 3d at 334 (explaining that Plaintiffs "must show how their interests 'in a particular place, animal, or plant species . . . [are] impaired by a defendant's conduct.'") (quoting *Ocean Advocs. v. U.S. Army Corps. of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005)).

Indeed, Plaintiff does not even allege (nor did the Concurrence Letters assert) that anything in the COP is contrary to the Concurrence Conditions. As to Conditions 3 and 4, bulk product transfer in Delaware's coastal zone is prohibited by Delaware law. *See* Del. Code Ann. tit. 7, § 7003; 7-101-4 Del. Admin. Code §§ 4.3, 4.5, and other DNREC and COP conditions bar the installation of permanent lighting at the proposed landing location.[4] The remaining conditions are independently incorporated in other Project documents: (i) condition 1 (requiring US Wind to obtain all necessary state permits, authorizations, and approvals),[5] (ii) condition 2 (the COP already requires that US Wind install cables using horizontal directional drilling to avoid impacts to state beaches and dunes),[6] (iii) condition 5 (multiple Project documents require the export cables to be buried at least 6' deep),[7] (iv) condition 6 (the COP requires US Wind to consult with the relevant

---

[4] COP, Vol. II § 6.4 ("Based on consultation with DNREC, the following habitat protection measures would be implemented to avoid and minimize impacts to species . . . Restrict nighttime artificial lighting restriction from June 1 through September 1 at Barrier Beach Landfall"); DNREC Coastal Construction Permit BP-06388, Condition 8 ("Artificial lighting shall not be utilized from June 1 to September 1 to minimize impacts to Bethany Beach firefly. No alterations to dune topography or woody vegetation during this time period within 100 feet of interdunal swales to minimize impacts to these sensitive species.").

[5] COP, Vol. I, Table 8-1 (listing required permits certifications, or approvals); *see also* 30 C.F.R. § 585.626(a)(12).

[6] COP, Vol. I § 6. In addition, damage, destruction, or removal of trees, shrubbery, beach grass or other vegetation growing on any State-owned or maintained beach is also prohibited by Delaware law. 7-5102-3 Del. Admin. Code § 3.7.1.5.

[7] *See, e.g.*, DNREC, Subaqueous Lands Permit (Jan. 8, 2025) ("Submarine cables in state-regulated jurisdictional waters of the Atlantic Ocean shall be buried to a minimum depth of

14

agencies regarding mitigation of proposed impacts to resources),[8] (v) condition 7 (the COP and USACE Permit indicate that US Wind will minimize dredging in biologically productive areas),[9] and (vi) condition 8 (US Wind has already committed to using environmental controls to mitigate turbidity).[10]

Since the COP Approval and the USACE Permit make the Concurrence Conditions binding on US Wind, and in any event, Plaintiff cannot connect the Concurrence Conditions to any alleged injury, the alleged failure to expressly incorporate them into the COP and USACE Permit could not plausibly cause any injury to Plaintiff. As a result, Plaintiff has failed to demonstrate that the challenged CZMA process is the legally relevant cause of his alleged harm. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions.") (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)).

---

-6 feet not to exceed -13.1 feet below the ocean bottom. Furthermore, onshore export cables in Delaware waters (i.e. within Indian River Bay and Indian River) shall be buried at least 1.83 m (6 ft) below the authorized depth of any state or federal navigation channel. For the portions of the Indian River Bay not overlapping with a designated navigation channel, the cables shall be buried to a depth of no less than1.83 m (6 ft)."), *available at* https://documents.dnrec.delaware.gov/Water/US-Wind/SP-043-24.pdf.

[8] COP, Vol. II § 6.4 ("Agency consultation and monitoring regarding coastal habitats and species will be conducted as needed to mitigate disturbances, as practicable"); Ex. 6, Condition 5.2.4.

[9] *See* COP, Vol. II § 7.3 ("The Project has been sited to avoid sensitive or rare habitats (such as high-density clam beds) where feasible, and habitat disturbance will be minimized to the extent practicable."); Ex. 7, Special Condition 12.c.i ("To the maximum extent practicable, avoid installing cables, dredging, or other construction activities in high and moderate densities of shellfish in the Indian River Inlet and surrounding estuarine waters.").

[10] *See* COP, Vol. II § 4.4 (noting that "Sediment disturbance associated with submarine cable laying will be minimized" and "Turbidity monitoring will be conducted during construction as required by the permitting authorities"); Ex. 7, General Condition 6; DNREC Water Quality Certification Specific Condition 1, 5; DNREC Subaqueous Lands Permit: SP-043/24, Special Condition 6(c), 7(b).

Plaintiff similarly cannot meet the redressability requirement. Demonstrating redressability requires a showing that it is likely, and not merely speculative, that a favorable decision from the court will remedy the Plaintiff's injury. *Lujan*, 504 U.S. at 561. This requirement ensures that a plaintiff "personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 491 (1975). Here, because Plaintiff cannot connect any alleged injury to his alleged CZMA procedural violation, a Court ruling that the Federal Defendants must correct that violation would not redress Plaintiff's alleged injury.[11]

The same conclusions apply to Plaintiff's allegations that the Consistency Certifications did not precisely match the required regulatory language. Compl. ¶¶ 60-65 (citing 15 C.F.R. §§ 930.57, 930.76(c)). Notably, his allegations rest not on language in the Consistency Certifications themselves—which clearly satisfy the statutory and regulatory requirements—but rather on language in the expert reports accompanying the certifications. Compl. ¶ 62. In any event, Plaintiff cannot possibly connect any of his alleged injuries to the immaterial language differences he alleges.

In sum, Plaintiff has failed to meet his burden of proving the injury in fact, traceability and redressability requirements for Article III standing.

**B.      Plaintiff is Not Within the CZMA's Zone of Interests**

In addition to proving Article III standing, "a person suing under the APA must satisfy . . . an additional test: The interest he asserts must be 'arguably within the zone of interests to be

---

[11] Moreover, easily remedied technical violations cannot serve as the basis for vacating a permit. *Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 929 (9th Cir. 2020) (refusing to vacate an agency decision where the violation was technical and "not 'serious'") (citation omitted); *Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.*, 833 F.3d 360, 377 (3d Cir. 2016) (applying a "'harmless error' analysis to any administrative action we review [because] mistakes that have no bearing on the substantive decision of an agency do not prejudice a party").

protected or regulated by the statute' that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (citation modified); *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016); *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, 123 F.4th 1, 20 (1st Cir. 2024).

A plaintiff must make this showing based on "the adverse effect upon him" and on the particular "statutory provision whose violation forms the legal basis for his complaint." *Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523-24 (1991) (citations omitted); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (noting that a statutory provision requiring "on the record hearings" was "obviously enacted to protect the interest of the parties to the proceedings[,]" but not third parties). The latter requirement means the zone of interests test turns not on a statute's overall purpose but on the particular "'statutory provision whose violation forms the legal basis for'" the claim. *Air Courier Conf. of Am.*, 498 U.S. at 523-34 (citation omitted).

The only CZMA provision that Plaintiff claims was violated is Section 307(c)(3)(B), 16 U.S.C. § 1456(c)(3)(B). Compl. ¶¶ 49, 57. However, the zone of interests under Section 307(c)(3)(B) does not extend to Plaintiff or any of his alleged injuries. Section 307(c)(3) "sets out procedures for granting or withholding [a] federal license depending on the judgment of the *state and the Secretary of Commerce*." *State of N.J., Dep't of Env't Prot. & Energy v. Long Island Power Auth.*, 30 F.3d 403, 419 (3d Cir. 1994) (emphasis added). The exclusive purpose of Section 307(c)(3) is to protect a state's "right to engage in 'consistency review.'" *AES Sparrows Point LNG, LLC v. Smith*, 527 F.3d 120, 123 (4th Cir. 2008). That means the zone of interests under Section 307(c)(3) cannot be construed as encompassing the alleged injuries of private individual

17

like Plaintiff.[12] *See Serrano-Lopez v. Cooper*, 193 F. Supp. 2d 424, 434 (D.P.R. 2002) ("The zone of interests regulated by the CZMA includes a state's protection of their coastal zones and *not* an individual's attempt to seek further protection once the CZMA requirements have been complied with.") (emphasis added); *id.* ("[N]o provision is made in the CZMA or Part 930 of the CFR for private or local entities and individuals to substitute their own interests and judgments for that of the reviewing state agency.").

Indeed, courts, including the U.S. District Court for the District of Maryland in another case challenging the COP Approval for the Project, have consistently held that there is no private right of action to enforce the CZMA where, as here, the state has concurred. *Mayor & City Council of Ocean City v. U.S. Dep't of the Interior*, No. SAG-24-3111, 2025 WL 1827963, at *9 (D. Md. July 2, 2025) ("Plaintiffs fail to state a claim because under the CZMA, there is no private right of action to challenge consistency certification concurrences from the states") (quoting *Oceans*, 2025 WL 973540 at *16); *Long Island Power Auth.*, 30 F.3d at 422-23; *Enos v. Marsh*, 616 F. Supp. 32, 63-64 (D. Haw. 1984) ("[T]here can be no violation of the CZMA when the consistency determination is approved by the state[.]"), *aff'd*, 769 F.2d 1363 (9th Cir. 1985). That is because the statute—on whose text alone any private right of action must be based [13]— requires only that the state concur.[14] Thus, for purposes of the statute, the Concurrence Letters communicated exactly

---

[12] The CZMA, which by its plain language does not speak to the handling of conditional concurrences, clearly did not create a procedural right designed to protect a private citizen in such instances. *Coastal Habitat All.*, 385 F. App'x at 361.

[13] "[A]ny private right of action for violating a federal statute must ultimately rest on congressional intent to provide a private remedy." *Reschini v. First Fed. Sav. & Loan Ass'n of Ind.*, 46 F.3d 246, 255 (3d Cir. 1995) (quoting *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991)).

[14] Under the CZMA, the state either "concurs with or objects to the applicant's certification," and, if a state "fails to" do either, "the state's concurrence with the certification shall be conclusively presumed." 16 U.S.C. §§ 1456(c)(3)(A), (B).

what they said, that the state "concurs" with US Wind's Consistency Certifications and Plaintiff cannot second guess Delaware's concurrence here.

Accordingly, Delaware (not Plaintiff) is the proper party to raise any issues with the alleged procedural violations. It is for the state to determine if a proposed activity is consistent with its own coastal zone management plan and why third parties cannot sue the federal government for claims regarding the sufficiency of the state's concurrence with its own policies. *See, e.g.*, *Mayor & City Council of Ocean City*, 2025 WL 1827963, at *9. As a result, all three of Plaintiff's claims fall outside the CZMA's zone of interests.

## VII.    CONCLUSION

For the foregoing reasons, US Wind requests the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to plead a claim such that relief could be afforded under any set of facts that could be proved under Federal Rule of Civil Procedure 12(c).

<table>
<tr>
<td>

Of Counsel:
Toyja E. Kelley, Sr.
Emily Huggins Jones
Gregory Waterworth
TROUTMAN PEPPER LOCKE LLP
401 9th Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel.: 202-220-6900
Fax. 202-220-6945
toyja.kelley@troutman.com
emily.hugginsjones@troutman.com
greg.waterworth@troutman.com

Hilary Tompkins
HOGAN LOVELLS US LLP
555 13th Street N.W.
Washington, D.C. 20004
Telephone: (202) 637-5617
hilary.tompkins@hoganlovells.com

David Newmann
HOGAN LOVELLS US LLP
1735 Market St., 23d Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
david.newmann@hoganlovells.com

Dated:  September 5, 2025

</td>
<td>

*/s/ James H. S. Levine*
James H.S. Levine (Del. Bar No. 5355)
TROUTMAN PEPPER LOCKE LLP
Hercules Plaza, Suite 1000
1313 Market Street
Wilmington, DE 19801
Tel.: 302-777-6500
james.levine@troutman.com

*Counsel for Defendant-Intervenor*
*US Wind, Inc.*

</td>
</tr>
</table>