# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| EDWARD E. BINTZ | ) |
| Plaintiff, | ) )  Civ. A. No.1:25-cv-00152-GBW |
| v. | ) ) |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al | ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT-INTERVENOR US WIND'S MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS

Edward E. Bintz
922 N. Cleveland St.
Arlington, VA  22201
E-mail: Ed.Bintz555@gmail.com

Dated: October 17, 2025

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ............................................................................................ 1

        A.      DNREC's Conditional Concurrence letters.............................................. 2

        B.      US Wind Recasts Plaintiff's Claims in Order to Challenge
                Plaintiff's Standing.......................................................................... 4

        C.      US Wind Lacks Support for a Variety of Claims it Makes About the Concurrence
                Conditions and its Consistency Certifications............................................ 5

II.     STATEMENT OF FACTS............................................................................... 6

III.    STANDARD OF REVIEW; US WIND'S FACTUAL CHALLENGE............................ 6

        A.      Rule 12(b)(1) ................................................................................. 6

        B.      Rule 12(c) ..................................................................................... 7

IV.     ARGUMENT................................................................................................ 7

        A.      Plaintiff Has Standing to Assert His Claims ........................................... 7

        B.      US Wind Wrongly Contends That the Concurrence Conditions Were
                "Nominal" and That BOEM's and USACE's Approvals Made Them
                Binding on US Wind ....................................................................... 11

        C.      Correspondence Shows That US Wind's CZMA Consistency Certifications
                Were Provided in the "Expert Reports." ............................................... 14

        D.      Plaintiff's Interests are Within the CZMA's Zone of Interests ..................... 16

V.      CONCLUSION............................................................................................ 19

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Akiak Native Community v. U.S. Postal Service,*
   213 F.3d 1140 (9th Cir. 2000)……………………………………………………….... 18

*Allegheny Defense Project, Inc. v. U.S. Forest Service,*
   423 F.3d 215 (3d Cir. 2005) ...................................................................................... 9

*Association of Data Processing Service Organizations, Inc. v. Camp,*
   397 U.S. 150 (1970) ................................................................................................... 8

*Bennett v. Spear,*
   520 U.S. 154 (1997) ................................................................................................. 17

*Blunt v. Lower Merion Sch. Dist.,*
   767 F.3d 247 (3d Cir. 2014) ...................................................................................... 8

*City of Waukesha v. E.P.A.,*
   320 F.3d 228 (D.C. Cir.2003) .................................................................................... 4

*Cottrell v. Alcon Laboratories,*
   874 F.3d 154 (3d Cir. 2017) ...................................................................................... 4

*Davis v. Wells Fargo,*
   824 F.3d 333 (3d Cir. 2016)………………………………………………………….4, 6

*Enos v. Marsh,*
   616 F. Supp. 32 (D. Haw. 1984), aff'd, 769 F.2d 1363 (9th Cir. 1985)…………………… 18

*Envtl. Def. Ctr. v. BOEM,*
   2017 WL 10607254  *4, *11(C.D. Cal. 2017…………………………………………...…18

*Food and Drug Administration v. Alliance for Hippocratic Medicine,*
   602 U.S. 367 (2024) ................................................................................................. 10

*Green Oceans v. Revolution Wind,*
   2025 WL 973540 at *14 (D.D.C Apr. 1, 2025)......................................................... 9

*In re Horizon Healthcare Services Inc. Data Breach Litigation,*
   846 F.3d 625 (3d Cir 2017) ....................................................................................... 8

*Info. Servs., Inc. v. Defense Automated Printing Servs.,*
   338 F.3d 1024 (D.C. Cir. 2003)................................................................................. 4

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
        572 U.S. 118 (2014)……………………………………………….. 16

*Lujan v. Defenders of Wildlife*,
        504 U.S. 555(1992)……………………………………..……..7, 8, 11

*Maio v. Aetna, Inc.*,
        221 F.3d 472 (3d Cir. 2000)……………………………………………7

*Mayor & City Council of Ocean City v. U.S. Dep't of the Interior*,
        2025 WL 1827963, at *9 (D. Md. July 2, 2025)………………………...18

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*,
        80 F.4th 215 (3d Cir. 2023)…………………………………………...10

*Ocean Mammal Institute v. Gates*,
        546 F. Supp. 2d 960, 980 (D. Haw 2008)…………………………………18

*Petruska v. Gannon Univ.*,
        462 F.3d 294, 302 n.3 (3d Cir. 2006)…………………………………….6

*Rosenau v. Unifund Corp.*,
        539 F.3d 218, 221 (3d Cir. 2008)……………………………………......7

*San Francisco Bay Conservation and Dev. Commn, v United States Army Corps of Engineers*,
        8 F.4th 839, 849 (9th Cir. 2021)…..………………………………………18

*SLPR, LLC v. The San Diego Port District*,
        2008 WL 2676771 *7 (S.D. Cal. 2008)…………………………………18

*Serrano-Lopez v. Cooper*,
        193 F. Supp. 2d 424, 434 (D.P.R 2002)……………………………...……..18

*Sierra Club v. Morton*,
        405 U.S. 727 (1992)……………………………………………………9

*Sierra Club v. United States Environmental Protection Agency*,
        972 F.3d 290, 299 (3d Cir. 2020)…………………………………….....9

*Spokeo v. Robins*,
        578 U.S. 330 (2016)……………………………………………….. .8, 9

*State of N.J., Dep't of Env't Prot. & Energy v. Long Island Power Auth.*,
        30 F.3d 403 (3d Cir. 1994)……………………………………………18

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)...................................................................10

*Warth v. Seldin*,
    422 U.S. 490 (1975).................................................................4

**Statutes:**

16 U.S.C. § 1451...................................................................1,17

16 U.S.C. § 1456(c).................................................................18

16 U.S.C. § 1456(c)(3)...............................................................1

16 U.S.C. § 1456(c)(3)(A).........................................................1, 4

16 U.S.C. § 1456(c)(3)(B).........................................................1, 4

**Regulations:**

15.C.F.R. § 930.4.................................................................2, 3

15 C.F.R. § 930.4(b).................................................................2

15 C.F.R. § 930.53(d)...............................................................4

15 C.F.R. § 930.80...................................................................4

**Other Authorities:**

65 Fed. Reg. 77124 (Dec. 8, 2000)...................................................3

71 Fed. Reg. 788 (Jan. 5, 2006)....................................................17

**Rules:**

Federal Rule of Civil Procedure 12(b)(1).......................................5, 6, 19

Federal Rule of Civil Procedure 12(c).............................................7, 19

## I.    INTRODUCTION

US Wind's Opening Brief for its Motion to Dismiss challenges Plaintiff's standing, but not based on the claims he actually asserts in his Complaint: that BOEM and USACE violated 16 U.S.C. § 1456(c)(3) by approving US Wind's COP and granting a federal permit (the "Permit").[1] *See* Compl. ¶¶ 49-50, 57-58.

16 U.S.C. § 1456(c)(3) bars a federal agency from approving an outer continental shelf plan (such US Wind's COP) or issuing permits or licenses until a state (here, Delaware) has received a "consistency certification" from the applicant (US Wind) and the state has concurred with the applicant's certification.[2]

As to outer continental shelf plans, 16 U.S.C. § 1456(c)(3)(B) states as follows:

> No Federal official or agency shall grant such person any license or permit for any activity described in detail in such plan [such as a COP] until such state or its designated agency receives a copy of such [federal consistency] certification and plan . . . and until . . .  such state or its designated agency . . . concurs with such person's certification. . .."

16 U.S.C. § 1456(c)(3)(A) contains a corresponding prohibition applicable to USACE's issuance of the Permits.[3]

---

[1] "COP" refers to US Wind's Construction and Operations Plan for its Maryland Offshore Wind Project (the "Project"). "USACE" refers the United States Army Corps of Engineers. The permit was issued pursuant to Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403 and Section 404 of the Clean Water Act. 33 U.S.C. § 1344 (the "Permit").

[2] 16 U.S.C. § 1456(c)(3) codified Section 307 of the Coastal Zone Management Act, 16 U.S.C §§ 1451 *et seq.* ("CZMA").

[3] Plaintiff's Complaint contains a typographical error in paragraph 57 of Count II of his Complaint in citing to 16 U.S.C. § 1456(c)(3)(B) rather than 16 U.S.C. § 1456(c)(3)(A). The text of Count II is clear that Plaintiff is asserting that USACE violated the CZMA by granting a permit to US Wind based on a Conditional Concurrence Letter that was deemed to be an objection. US Wind's Opening Brief recites this claim and also cites to 16 U.S.C. § 1456(c)(3)(A). *See* D.I. 31 at 2, 4, 17.

1

Thus, without concurrences from Delaware, BOEM and USACE were barred from approving the COP or granting the Permit.

**A. DNREC's Conditional Concurrence Letters**

On July 9, 2024, DNREC issued two Conditional Concurrence Letters to US Wind – one covering approval of the COP and the other covering the granting of the Permit. *See* **Exhibit A**. Pursuant to the Conditional Concurrence Letters, DNREC concurred with US Wind's consistency certifications, but subject to eight conditions (the "Concurrence Conditions") being satisfied. The letters did not require US Wind to satisfy the conditions, but instead conditioned DNREC's concurrence on the conditions being satisfied.

The Conditional Concurrence Letters stated that "*[f]ailure to comply with 15 C.F.R. § 930.4 as it relates to the conditions will result in this conditional concurrence being deemed an objection.*"[4] 15 C.F.R. § 930.4 (the "Conditional Concurrence Regulation") requires, among other things, that (a) the COP or permit application be amended to incorporate the State-imposed concurrence conditions and (b) the agency approve the amended COP or application "as modified to incorporate the State agency's conditions." *See Id.* US Wind failed to amend its COP or USACE application, resulting in the Conditional Concurrence Letters being deemed to be objection letters in accordance with terms of the letters and the Conditional Concurrence Regulation. The Conditional Concurrence Regulation states that if the requirements of the regulation are not satisfied "*all parties shall treat the State agency's conditional concurrence as an objection. . . .*" 15 C.F.R. § 930.4(b) (emphasis added).

Nothing in the Conditional Concurrence Letters or the regulation *required* US Wind to

---

[4] The letters further state that if the letters become objections, US Wind may within thirty days of receipt of the Conditional Concurrence letter submit a request to the Secretary of Commerce to override the objection.

amend its COP or USACE application.[5]  Nor could any cause of action be asserted by BOEM, USACE, DNREC, or Plaintiff for US Wind's not complying with the Conditional Concurrence Regulation – the regulation only sets forth the terms under which a conditional concurrence letter will be treated as a concurrence or an objection.

In issuing the Conditional Concurrence Regulation, NOAA was clear that strict compliance with the regulation's conditions is required for a conditional concurrence to be treated as a concurrence.[6]  *See* 65 Fed. Reg. 77124, 77127.   When NOAA adopted the CZMA federal consistency regulations (15 C.F.R. Part 930), it expressly rejected allowing agencies to impose the State's conditions in place of applicants amending their applications:

> *[I]t is also the responsibility of the applicant to address the State's conditions in the application, rather than have the Federal agency granting the permit or license directly impose the conditions.* If the applicant did not modify its federal permit application pursuant to the State conditions or the Federal agency did not approve the amended application (with the State conditions), then the concurrence would be deemed an objection.  65 Fed. Reg. 77124, 77128 (Dec. 8, 2000). (Emphasis added)

This is consistent with NOAA's determination that "[s]ince conditional concurrence could seriously weaken the State authority granted under the CZMA consistency requirement, this rule only allows conditional concurrences pursuant to [the three requirements set forth in 15 C.F.R. 15 § 930.4.].  *Id* at 77127.

Because US Wind failed to amend its COP and USACE Permit application to incorporate the conditions specified in the Conditional Concurrence Letters, the letters were deemed to be objection letters under the terms of the letters and Conditional Concurrence Regulation.  As a result, BOEM's and USACE's approval of the COP and issuance of the Permit violated 16 U.S.C.

---

[5] US Wind did not countersign the letters, nor was a countersignature called for in the letters.

[6] The CZMA statute itself does not address conditional concurrences.

§ 1456(c)(3)(A) and (B) and 15 C.F.R. §§ 930.53(d) and 930.80.

**B. US Wind Recasts Plaintiff's Claims in Order to Challenge His Standing.**

Plaintiff's legal claims are straight-forward. They allege that BOEM and USACE violated 16 U.S.C. § 1456(c)(3)(A) and (B) by approving the COP and issuing the Permit without having received the needed consistency concurrences from Delaware. 16 U.S.C. § 1456(c)(3)(A) and (B) concern themselves only with whether the applicable government agency has received the State's concurrence. Ignoring this, US Wind asserts that Plaintiff cannot show injury from *"the Federal Defendants' alleged violation of a CZMA regulatory requirement—i.e., issuing the COP Approval and USACE Permit without first amending the COP to include the Concurrence Conditions."* D.I. 31 at 10. (Emphasis added).

US Wind's recasting of Plaintiff's claims in order to challenge his standing is impermissible under Third Circuit case law. In *Cottrell v. Alcon Laboratories*, 874 F.3d 154, (2017), the Third Circuit stated that "[t]o maintain this fundamental separation between standing and merits at the dismissal stage, we assume for the purposes of our standing inquiry that a plaintiff has stated valid legal claims." *Cottrel,* 874 F.3d at 162 (Citing *Info. Handling Servs., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) in turn citing *Warth v. Seldin*, 422 U.S. 490, 500, (1975)). Similarly, in *City of Waukesha v. E.P.A.*, 320 F.3d 228, 235 (D.C. Cir.2003), the court stated that "in reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims."[7] US Wind's recasting of Plaintiff's claims as something other than what he asserts in his Complaint goes to the merits of Plaintiff's

---

[7] *See also Davis v. Wells Fargo*, 824 F.3d 333, 348 (3rd Cir.2016) (The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits.").

statutory claims and is impermissible in a Rule 12(b)(1) motion to dismiss for lack of standing. *See* Complaint ¶¶ 49-50, 57-58.

Flowing from US Wind's impermissible recasting of Plaintiff's statutory claims, US Wind insists that Plaintiff's pleadings are deficient, but based on its impermissible, recasted version of Plaintiff's claims, not the ones he actually makes. For example, US Wind states "Plaintiff lacks Article III standing because he has failed to plead actual or imminent injury in fact relating to any of the supposedly omitted "conditions" in DNREC's concurrence." D.I. 31 at 2. Similarly, it states that "[i]ndeed, Plaintiff does not allege there is any inconsistency between those conditions and any aspect of the COP as approved by BOEM." *Id.*

### C. US Wind Lacks Support For a Variety of Claims it Makes About the Concurrence Conditions and its Consistency Certifications

US Wind claims that the Concurrence Conditions were "*nominal*" and that BOEM's and USACE's approvals make the Concurrence Conditions binding on US Wind. *See* D.I. 31 at 2, 6, 13. The facts don't back this up. The Concurrence Conditions address important matters and are intended to protect Delaware's coastal resources. For example, the Conditional Concurrence Letters' sixth condition requires US Wind to submit "all mitigation and monitoring plans [to DNREC] for impacts to habitat and living resources. . .." *See* Exhibit A. This would provide DNREC with an important right that's not in the COP.

US Wind also asserts that conditions imposed by BOEM and USACE in their approvals require US Wind to comply with the Concurrence Conditions. But this assertion lacks support, including because USACE never adopted the BOEM condition that US Wind points to as requiring US Wind's compliance with the Concurrence Conditions. Plaintiff addresses this in Section IV.B.

US Wind also claims that Plaintiff Complaint is wrong in asserting that US Wind consistency certifications were provided in a consultant's report. Instead, US Wind contends that

the certifications were prepared on a "Delaware-mandated form." *See* D.I. 31 at 5. But this is contradicted by correspondence among US Wind, BOEM, and DNREC. Plaintiff addresses this in Section IV.C.

## II.    STATEMENT OF FACTS

The facts relevant to US Wind's Motion to Dismiss are included in the "Introduction" section of this Brief, elsewhere in this brief as Plaintiff addresses the claims made by US Wind, and in the "Introduction" and "Background" paragraphs of Plaintiff's Complaint. *See* Complaint, ¶¶1-7, 25-41.

## III.   STANDARD OF REVIEW; US WIND'S FACTUAL CHALLENGE

### A.    Rule 12(b)(1)

A challenge to subject matter jurisdiction under Rule 12(b)(1) is categorized as either a facial attack or a factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d. Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Wells Fargo*, 824 F.3d at 346 (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). In contrast, a factual attack "attacks the factual allegations underlying the complaint's assertion of jurisdiction" and allows the Court to "weigh and consider evidence outside the pleadings." *Wells Forgo*, 824 F.3d at 346 (internal quotation marks omitted).

US Wind indicates in its Opening Brief that it is making a factual challenge under Rule 12(b)(1), stating that "plaintiff fails to satisfy necessary factual jurisdictional prerequisites." *See* D.I. 31 at 8. US Wind doesn't identify the specific facts it's challenging. But it's likely that they relate to its invalid recasting of Plaintiff's claims and its related invalid assertions about the sufficiency of his pleadings. US Wind's factual challenge also appears to include its claim that its

CZMA consistency certifications were prepared on a "Delaware-mandated form" rather than in "expert reports" prepared by consultants. [8] *See* D.I. 31 at 5.

### B. Rule 12(c)

When evaluating a motion for judgment on the pleading under Rule 12(c), the court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). A Rule 12(c) motion is not granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau,* 539 F.3d at 221.

US Wind's states that its Rule 12(c) argument is based on its allegation that Plaintiff is not within the CZMA's zone of interests and that the CZMA does not provide a private right of action. *See* D.I. 31 at 3, 16-19.

As stated by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."

### IV.    ARGUMENT

### A. Plaintiff Has Standing to Assert his Claims

The Supreme Court has distilled the core question underlying whether a plaintiff has Article III standing as "What's it to you?"  To answer that question, the courts require that a plaintiff show the following: (1) an injury in fact; (2) a causal connection between the injury and

---

[8] In refereeing to "expert reports" US Wind is referring to a consultant's report prepared by consulting firm TRC that was attached as an Appendix M-2 to Volume II of US Wind's COP. The report appears to have updated an earlier version of the report, dated November 2021, that is identified as being prepared by ESS Group.

challenged conduct, meaning that the injury must be fairly traceable to the challenged action of

the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir.

2014) citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

Plaintiff satisfies each of the three requirements with respect to the claims he asserts in

his Complaint.

### 1.    Plaintiff Has Incurred an Injury in Fact That is Actual or Imminent and Not Speculative

An injury-in-fact is an invasion of a legally protected interest that is "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo v. Robins,* 578

U.S. 330, 338 (2016).  The Third Circuit has stated on numerous occasions that establishing an

injury-in-fact at the motion to dismiss stage "is not Mount Everest" and that its contours "while

not precisely defined, are very generous, requiring only that [a] claimant allege [ ] some specific,

identifiable trifle of injury." *See e.g. In re Horizon Healthcare Services Inc. Data Breach

Litigation*, 846 F.3d 625, 633 (3d Cir. 2017) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d

247, 278 (3d Cir. 2014)).

### a. Plaintiff has Suffered An Injury That is Concrete and Particularized

In determining whether an injury is concrete, courts look to whether the plaintiff's alleged

injury has a "close relationship" to a harm traditionally recognized as providing a basis for a

lawsuit in American courts. *See Spokeo* v. *Robins,* 578 U.S. at 341.   Aesthetic and recreation

harms have long been recognized by American courts as establishing injury in fact as reflected by

a substantial body of Supreme Court and Third Circuit case law.[9]   Here, Plaintiff's Complaint

---

[9] *See Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150,
153-54 (1970) ("[T]he Administrative Procedure Act grants standing to a person 'aggrieved

Footnote continued on next page

alleges, with supporting facts, that the Project will harm his aesthetic and recreational interests at his long-time home in South Bethany. He has also alleged, with supporting facts, that this harm will harm him in a personal and particularized way as a long-time South Bethany homeowner who regularly swims on South Bethany's beach, walks along the shoreline from South Bethany to and through Bethany Beach and Fenwick Island State Park, and fat bikes along the shoreline in the area from South Bethany to Ocean City and Indian River Inlet. *See Spokeo* 578 U.S at 339.

US Wind's COP and the Final Environmental Impact Statement for the Project (the "FEIS") further evidence that Plaintiff satisfies the injury in fact requirement. Volume II of the COP includes, as Appendix J, an over 200 page "Visual Impact Assessment" for the Project.[10] Section 4.5.8 of the Appendix concludes that the visual impact of the Project from Bethany Beach's boardwalk would be "Major." Plaintiff's home in South Bethany is approximately one

---

by agency action within the meaning of a relevant statute" and "[t]hat interest, at times, may reflect 'aesthetic, conservational, and recreational' as well as economic values."); *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) ("[T]he complaint alleged that the development would destroy or otherwise adversely affect the scenery, natural and historic objects and wildlife of the park and would impair the enjoyment of the park for future generations." "We do not question that this type of harm may amount to an 'injury in fact' sufficient to lay the basis for standing under §10 of the APA."); *Sierra Club v. United States Environmental Protection Agency* 972 F.3d 290, 299 (3d Cir. 2020) ("When, as here, the complaint demonstrates such an actual harm that will "directly affect [ ] those affiants' recreational, aesthetic, and economic interests," standing is satisfied.); *Allegheny Defense Project, Inc. v. U.S. Forest Service*, 423 F.3d 215 (3d Cir. 2005) ("The Supreme Court has held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons "for whom the aesthetic and recreational values of the area will be lessened" by the challenged activity.) (Citing *Sierra Club v. Morton,* 405 U.S. at 735); *Green Oceans v. Revolution Wind,* 2025 WL 973540 at *14 (D.D.C 2025) (individuals who use the waters near offshore wind project for recreational fishing, sailing, observing protected marine mammal, and observing and studying protected species of wild birds in the area" alleged injury sufficient to confer standing).

[10] https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/App%20II-J1%20VIA_0.pdf

mile south of the Bethany Beach boardwalk, so it's somewhat closer to the Project than Bethany Beach. Thus, the visual impact to Plaintiff would be the same or greater as for Bethany Beach.

Similarly, the FEIS includes, as Appendix H, an over 60-page "Cumulative Seascape, Landscape, and Visual Impact Assessment" that has more than 200 pages of attached analysis documents.[11]  It also concludes that the visual impact of the Project from Bethany Beach's boardwalk would be "Major." *See* FEIS, Appendix H, Tables H-15, H-22.

### b. Plaintiff's Injury is "Actual or Imminent, not Conjectural or Hypothetical

"To be 'imminent,' either a threat of injury must be 'certainly impending,' or there must at least be 'a substantial risk that the harm will occur.'" *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.,* 80 F.4th 215, 218 (3d Cir. 2023) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). US Wind has stated that it has begun construction activities and is committed to continuing to move forward on the Project. *See* D.I. 32 at 6-7.  This satisfies the imminence standard.

### c. There is a Causal Connection Between the Injury and the Challenged Conduct, and the Injury Likely Will be Redressed By a Favorable Decision

To establish causation, a plaintiff must "establish that the plaintiff's injury likely was caused or likely will be caused by the defendant's conduct." *Food and Drug Administration v. Alliance for Hippocratic Medicine,* 602 U.S. 367, 368 (2024).  Redressability requires the plaintiff to demonstrate "that the injury would likely be redressed by the requested judicial relief." *Id.*  Here, the Federal Defendants' approval of the COP and issuance of the Permit were a precondition to

---

[11] https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Maryland%20Offshore%20Wind%20Final%20EIS_AppH%20SLVIA_30Aug2024.pdf

US Wind moving forward with the Project. If, as Plaintiff's Complaint requests, BOEM's COP

approval and USACE's issuance of the Permit were vacated, the Project would be halted.[12]

B. **US Wind Wrongly Contends That the Concurrence Conditions Were "Nominal" and That BOEM's and USACE's Approvals Made Them Binding on US Wind.**

1. **The Concurrence Conditions are Not "Nominal" as US Wind Contends**

US Wind dismisses DNREC's Concurrence Conditions as being "nominal." D.I. 31 at 2.

It's wrong. The Concurrence Conditions address important matters and are intended to serve to

protect Delaware's coastal resources. For example, the Conditional Concurrence Letters' sixth

condition ("Condition 6") would require US Wind to submit "all mitigation and monitoring plans

to the DCMP [DNREC] . . . for impacts to habitat and living resources such as marine mammals,

sea turtles, birds, bats, fish, and invertebrates." *See* Exhibit A. Including this condition in the COP

would ensure that DNREC would have the opportunity to weigh in on crucial habitat and living

resource mitigation and protection plans (even if the plan was already "final" it could still express

it's views) and/or take action to ensure that Delaware's interests are protected.

Appendix G to the Final Environmental Impact Statement contains a 42-page table that

lists mitigation and monitoring measures from the COP, a Biological Opinion issued by the U.S.

Fish and Wildlife Service (USFWS), and other sources.[13] The table reflects numerous reports that

---

[12] As part of US Wind's recasting of Plaintiff's 16 U.S.C. § 1456(c)(3)(A) and (B) claims, US Wind asserts that its failure to amend the COP to incorporate the Concurrence Conditions was a "procedural violation" such that, for standing purposes, it was a "procedural rights" case. *See* D.I. 31 at 9-10. Here, Plaintiff's 16 U.S.C. § 1456(c)(3)(A) and (B) claims are not "procedural rights" claims. The statutory requirement that federal agencies have State concurrences before approving a COP or issuing a permit is simply a condition to the agency's approval rather than a procedural right. In a procedural rights case, the redressability and imminence requirements are loosened. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 572n.7 (1992).

[13] https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Maryland%20Offshore%20Wind%20Final%20EIS_AppG%20Mitigation%20Monitoring.pdf

Condition Six would require US Wind to submit to DNREC (and that the COP would not otherwise require US Wind to provide to DNREC).

For example, page G-5 of Appendix G states that US Wind is required to distribute to BOEM, BSEE (Bureau of Safety and Environmental Enforcement), and USFW a "Compensatory Mitigation Plan" for piping plover (a threatened species) and several other marine birds. *See* Exhibit B. The required report is also described in Volume II of the COP, which similarly states that the report is required to be distributed to BOEM, BSEE, and USFWS for their review and comment. *See* COP, Vol. II, § 12.3.[14] It does not mention distributing the report to DNREC. Condition 6 ensures that DNREC would receive a copy of the report and have the opportunity to respond as it determines appropriate. Appendix G reflects numerous other examples of where Condition 6 would provide DNREC with valuable rights, including receiving a copy of a pile driving mitigation and monitoring plan (protecting marine mammals). *See* Appendix G at G-9; Exhibit B.

Contending that the COP already satisfies Condition 6, US Wind quotes COP, Vol. II § 6.4 (relating to Mitigation and Monitoring for Coastal Habitat and Birds) as stating that "[a]gency consultation and monitoring regarding coastal habitats and species will be conducted as needed to mitigate disturbances, as practicable."[15] *See* D.I. 31 at 14-15. But this heavily caveated statement ("as needed" and "as practicable") doesn't require US Wind to submit to DNREC the information required by Condition 6. And it's doubtful that the statement even applies to mitigation and

---

[14] COP, Vol. II: https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/2024-07-01_US%20Wind%20COP%20Vol%20II_Rev%209%20%28Jul%202024.pdf

[15] US Wind's Opening brief specifically addresses the Bethany Beach Firefly (a threatened species), stating that the COP restricts artificial lighting during the period from June 1 to September 1 to minimize impacts to the firefly. But Condition 4 in the Conditional Concurrence Letters states that [n]o permanent lighting shall be installed at the landing location to minimize impacts to the Bethany Beach Firefly." *See* Exhibit A. The COP doesn't address this.

monitoring measures covered in other separate sections of the COP addressing, for example finfish, marine mammals, and marine birds. Those sections do not provide for US Wind to consult with DNREC or provide mitigation and monitoring plans to DNREC. *See* COP §§ 8.2.4, 9.3, 10.3, 11.3, and 12.3.

> **2.     US Wind's Claim that BOEM's Conditions of Approval Require it to Comply With the Concurrence Conditions is Invalid.**

US Wind claims that the "Conditions of Construction and Operations Approval" accompanying BOEM's COP approval require US Wind to comply with the Concurrence Conditions. It bases this on a BOEM approval condition requiring US Wind to comply with "all applicable requirements" in "permits and authorizations issued by state and local agencies for the Project." *See* D.I. 31 at 6, 13. But even if the Conditional Concurrence Letters are treated as permits or authorizations issued by the state (despite the letters being deemed objections), the argument fails. As discussed in Section I.A of this Brief, the Conditional Concurrent Letters did not require US Wind to comply with the Concurrence Conditions. They simply made US Wind's complying with them a condition to DNREC's concurrences (and became moot due to the concurrences being deemed objections). Thus, the letters did not create a binding requirement that US Wind comply with the Concurrence Conditions that could be within the scope of BOEM's approval conditions.

With respect to USACE's approval of US Wind's Permit, US Wind states that "Special Condition 6 of the USACE Permit expressly makes the permit subject to 'BOEM's final conditions of COP approval.'" D.I. 31 at 6-7. US Wind is in error. USACE's Special Condition 6 states, in relevant part, as follows:

> The Corps will review BOEM's final conditions of COP approval as well as any future modifications or waivers to the COP conditions, to determine if a DA [Department of the Army] permit modification will be required to

align these DA permit Conditions with the analogous conditions in the COP approval. *See* D.I. 31-7 at p. 10 of 13.

Thus, USACE's Special Condition 6 does not serve to adopt BOEM's approval conditions.

### C. Correspondence Shows That US Wind's CZMA Consistency Certifications Were Provided in the "Expert Reports."

Plaintiff's Complaint alleges that US Wind's consistency certifications were provided by a consultant's report that provided watered down certifications that failed to comply with CZMA regulations. *See* Compl. ¶¶ 49-50, 57-58. US Wind's Opening Brief states that its CZMA-required consistency certifications were "prepared on a Delaware-mandated form" and "accompanied by detailed expert reports …."[16] D.I. 31 at 5. But contradicting US Wind's claims, correspondence among US Wind, BOEM, and DNREC reflect that the consistency certifications were provided in the consultants' reports (US Wind refers to them as the "expert reports"). This is reflected by the following:

*First,* in a June 23, 2022 email from BOEM to DNREC, BOEM states that it's forwarding to DNREC "a Federal Consistency Certification" and a "signed Consistency Form for Mayland Offshore Wind."[17] *See* Exhibit C. The top part of the email identifies two attachments named as follows: (1) "Delaware Federal Consistency Form signed.pdf" and (2) "Federal Consistency Certification for Delaware.pdf." DNREC's Coastal Zone Management Act Federal Consistency Forms have a signature block, and US Wind has signed them. The TRC expert reports, however, are unsigned, reflecting that the TRC expert report is the "Federal Consistency

---

[16] Volume II of US Wind's COP attaches as Exhibit M-2 a copy of a consultant's report (the report identifies the consultant as "TRC") entitled "Consistency with Delaware State Coastal Zone Management Policies. An earlier version of the report, dated November 2021, identifies the November 2021 report as being prepared by ESS Group. It appears that in referring to "expert reports," US Wind is referring to the TRC and ESS reports.

[17] https://documents.dnrec.delaware.gov/coastal/federal-consistency/us-wind/Maryland-Offshore-Wind-Project-Federal-Consistency-Certification-Email-20220623.pdf

Certification for Delaware" document that was attached to BOEM's June 23, 2022 email. A July 31, 2022 DNREC website notice for US Wind's federal consistency process confirms this. The notice included a "Federal Consistency Certification" tab, which linked to the TRC expert report."[18] *See Id.*  The notice also included a  "Federal Consistency Form" tab, which linked to a signed copy of DNREC's "Coastal Zone Management Act Federal Consistency Form."

      *Second*, a March 29, 2024 email from US Wind to BOEM shows that US Wind itself viewed the TRC expert report as providing the required Federal Consistency Certifications. *See* Exhibit D.  In the email, US Wind sends "revised DNREC applications" and a "revised Federal Consistency Statement" to BOEM.[19]  The letter attaches two documents, one of which is labeled "DNREC application materials" and the other "Federal Consistency Statement and Certifications." The attachments are not publicly available, but due to their labeling in the letter and the June 23, 2022 email, it's nearly certain that (1) the "revised Federal Consistency Statement" is the TRC expert report and (2) the "revised DNREC applications" are DNREC Coastal Zone Management Act Federal Consistency Forms (the form uses the term "applicant").

      *Third*, Volume II of US Wind's COP attaches as Exhibit M-2 a copy of the expert report.[20] US Wind's signed Coastal Zone Management Act Federal Consistency Forms aren't posted on BOEM's website.

      But even if US Wind provided its consistency certifications using DNREC's Federal Consistency Forms (and the evidence shows otherwise), the certification statement language in the

---

[18] https://dnrec.delaware.gov/public-notices/federal-consistency-certification-us-wind-maryland-offshore-project/

[19] The DNREC Federal Consistency Form uses the term "applicant" and calls for it to be signed by the "applicant." *See* Exhibit E**.**

[20] The expert report included as part of the COP was prepared by US Wind's consultant, TRC. The report appears to be an update to a November 2021 report prepared by ESS Group.

forms suffers from a similar problem as the certification statements in the expert reports. The forms generally include the required certification statement, but it's watered down by the caveat that the certification is "[b]ased upon the information, data, and analysis included herein." *See* Exhibit E.

Adding to the confusion, DNREC's website reflects that there are two different signed March 29, 2024 versions of BOEM's DNREC Federal Consistency Form.[21] *See* Exhibits E-1 and E-2. Similarly, there are two different signed March 29, 2024 versions of USACE's DNREC Federal Consistency Form. *See* Exhibits E-3 and E-4.

### D. Plaintiff's Interests are Within the CZMA's Zone of Interests

US Wind contends that the interests Plaintiff asserts in his Complaint are not "arguably" within the "zone of interests" to be protected or regulated by the CZMA. According to US Wind, only Delaware can raise the CZMA violations he asserts. US Wind is wrong.

In the APA context, the Supreme Court has established a standard that creates a strong presumption in favor finding that a Plaintiff's interests are within a statute's zone of interests. In *Lexmark Inter., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court explains the zone of interest standard in the context of the APA as follows:

> [I]n the APA context, [the zone of interests] test is not especially demanding. In that context we have often "conspicuously included the word 'arguably' in the test to indicate that the benefit of any doubt goes to the plaintiff," and have said that the test "forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that' " Congress authorized that plaintiff to sue. That lenient approach is an appropriate means of preserving the flexibility of the APA's omnibus judicial review provision, which permits suit for violations of numerous statutes of varying character that do not themselves include causes of action for judicial review.

---

[21] The April 21, 2024 DNREC Notice posting the documents is at: https://dnrec.delaware.gov/public-notices/cce20240149/

Plaintiff brings his claims under the CZMA's federal consistency provisions established in Section 307(c) of the CZMA (16 U.S.C. 1456(c)).  BOEM has described the CZMA's federal consistency provisions as "the cornerstone of the CZMA." 71 Fed. Reg. 788, 789 (January 5, 2006).  Indeed, without Section 307's requirements that parties provide States with consistency certifications to which the states can concur or object, the statute would have no teeth and be substantially ineffective.

The CZMA's statements of Congressional findings and declaration of policy reflect a clear intent to protect the interests that Plaintiff seeks to protect in filing his Complaint.  Congress' findings include that the coastal zone is rich in a variety of recreational, ecological, and esthetic resources and that "[i]mportant cultural, historic, and esthetic values in the coastal zone which are essential to the well-being of all citizens are being irretrievably damaged or lost." CZMA §302; 16 U.S.C. U.S.C. §1451.  Its "declaration of policy" identifies a "national policy" that includes protecting "the resources of the Nation's coastal zone for this and succeeding generations" and for "giving full consideration to ecological, cultural, historic, and esthetic values . . .." CZMA §303 (16 U.S.C. §1452).

The Supreme Court has stated that "the breadth of the zone of interests varies according to the provisions of law at issue. . .." *See Bennett v. Spear*, 520 U.S. 154, 163 (1997)*. Here, Plaintiff's claims are brough under the CZMA's federal consistency provisions, which are the cornerstone of the CZMA and without which the CZMA would be ineffective in advancing Congress' stated findings and declaration of policy. Thus, Plaintiff's interests are clearly within the CZMA's zone

of interests, which is consistent with substantial case law allowing CZMA claims to be brought under the APA.[22]

US Wind cites *Mayor & City Council of Ocean City v. U.S. Dep't of the Interior*, No. SAG-24-3111, 2025 WL 1827963, at *9 (D. Md. July 2, 2025) to support its claim that there is no private right of action under the CZMA. But in *Ocean City*, the court stated that "Plaintiff's object to the states' actions, not BOEM's, and cites no statutory provision that would have authorized BOEM to challenge the states' conclusions." *Id.* US Wind also cites *State of N.J., Dep't of Env't Prot. & Energy v. Long Island Power Auth.*, 30 F.3d 403 (3d Cir. 1994), but in that case, the plaintiffs were seeking to assert CZMA claims against private parties. *Id.* at 422.

US Wind points to *Enos v. Marsh*, 616 F. Supp. 32, 63-64 (D. Haw. 1984), *aff'd*, 769 F.2d 1363 (9th Cir. 1985), quoting it as stating "[T]here can be no violation of the CZMA when the consistency determination is approved by the state." D.I. 31 at 18. This appears to be dicta since

---

[22] *San Francisco Bay Conservation and Dev. Commn, v United States Army Corps of Engineers*, 8 F.4th 839, 849 (9th Cir. 2021) (CZMA claim under APA against USACE allowed); *Ocean Mammal Institute v. Gates*, 546 F. Supp. 2d 960, 980 (D. Haw. 2008) ("Although the CZMA lacks a citizen suit provision, judicial review of agency compliance is available pursuant to the APA"); *Envtl. Def. Ctr. v. BOEM*, 2017 WL 10607254 *4, *11 (C.D. Cal. 2017) (concluding that "CZMA claims [are] subject to judicial review under § 702 of the APA," after recognizing zone of interest requirement); *SLPR, LLC v. The San Diego Port District*, 2008 WL 2676771 *7 (S.D. Cal. 2008) (denying motion to dismiss private plaintiff CZMA claim against federal defendants); *Akiak Native Community v. U.S. Postal Service*, 213 F.3d 1140 (9th Cir. 2000) ("Judicial review of actions under CZMA and NEPA ordinarily is governed by the Administrative Procedure Act (APA);" USPS is exempt from the APA, but the APA standard of review applies); The lone contrary authority that US Wind cites is *Serrano-Lopez v. Cooper*, 193 F. Supp. 2d 424, 434 (D.P.R. 2002). But the *Serrano-Lopez* court's decision was based on whether CZMA's zone of interests includes "an individual's attempt to seek further protection once the CZMA requirements have been complied with." *Id. at* 434. Here, DNREC's consistency concurrences are deemed objections, resulting in noncompliance with the CZMA. The *Serrano-Lopez* decision has not been followed by other courts. It's also unclear whether the plaintiff in *Serrano-Lopez* even brought a claim under the APA. *See Serrano-Lopez* at 426 ("[E]ven if we assume arguendo, that Plaintiff could and is bringing this action under the Administrative Procedure Act . . ..). *Id. at* 426.

the court ruled that the CZMA did not apply. But the decision only serves to affirm that BOEM and USACE were bound to treat the Conditional Concurrence Letters as deemed objections in accordance with the terms of the letters.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant-Intervenor's motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to plead a claim such that relief could be afforded under any set of facts that could be proved under Federal Rule of Civil Procedure 12(c).

Respectfully submitted,

*Edward E. Bintz*

Edward E. Bintz
922 N. Cleveland St.
Arlington, VA 22201
Email: Ed.Bintz555@gmail.com

Dated: October 17, 2025